Louis C. OSTRER, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

No. 1095, Docket 78–2050.

United States Court of Appeals, Second Circuit.

Argued June 5, 1978.

Decided Sept. 21, 1978.

As Amended Oct. 13, 1978.

---

Alan Dershowitz, Cambridge, Mass. (Harvey A. Silvergate, Ann Lambert Greenblatt, Atty., Silvergate, Shapiro & Gertner, Boston, Mass., of counsel), for petitioner-appellant.

Gregory L. Diskant, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, Richard D. Weinberg, Asst. U. S. Atty., New York City, of counsel), for respondent-appellee.

Before FEINBERG and MANSFIELD, Circuit Judges, and WERKER, District Judge.*

* Of the United States District Court for the Southern District of New York, sitting by designation.

MANSFIELD, Circuit Judge:

The sole issue presented by this appeal is whether appellant, who was sentenced in 1973, after trial and conviction in the Southern District of New York, to serve a term of three years' imprisonment for his participation in a securities fraud conspiracy, was entitled to remain at liberty pending possible review of this Court's affirmance on April 18, 1978, 577 F.2d 782, of an order of the Southern District, Charles L. Brieant, *Judge,* denying him habeas relief which had been sought under 28 U.S.C. § 2255. We hold that he was required to surrender. We therefore affirm the district court's denial of two motions for bail *pendente lite.*

This appeal must be viewed against the backdrop of appellant's numerous post-conviction efforts to postpone or avoid service of his sentence, which he succeeded in doing for five years. After Ostrer was convicted in 1973 on 11 counts of a 40-count indictment he sought a new trial on grounds not relevant here. Chief Judge Edelstein, who had presided over Ostrer's trial, denied the motion and sentenced him on April 12, 1973, to serve a term of three years' imprisonment and to pay fines of $55,000. Bail was granted pending appeal.

The conviction and denial of the new trial motion were affirmed by us on January 4, 1974, *United States v. Dioguardi,* 492 F.2d 70 (2d Cir. 1974), and the Supreme Court denied certiorari on October 15, 1974. 419 U.S. 829, 95 S.Ct. 49, 42 L.Ed.2d 53 (1974). After the Government noticed Ostrer's surrender for December 2, 1975, but agreed to continue the surrender date for two weeks, Ostrer on December 11, 1974, filed another new trial motion. Chief Judge Edelstein denied bail, 386 F.Supp. 159 (S.D.N.Y.1974), but on December 17, 1974, we granted Ostrer's motion to remain at large until "24 hours after a decision by the United States District Court on the motion for a new trial,

or until the next panel of this Court is available to hear any subsequent bail application, whichever is the later of those two dates."

Judge Brieant, to whom the case had been transferred, denied the motion on June 4, 1976, 422 F.Supp. 93 (S.D.N.Y.1976), but ordered that Ostrer be "continued on his existing bail pending appellate finality, unless the Court of Appeals shall direct otherwise." 422 F.Supp. at 108. On October 28, 1976, we affirmed the denial of the motion, and ordered that our mandate issue forthwith. 551 F.2d 303 (2d Cir. 1976).

In an effort to stave off surrender, Ostrer next filed a motion addressed to Judge Brieant, seeking an order declaring that his June, 1976, grant of bail "pending appellate finality" was still in effect despite the forthwith issuance of this Court's mandate. Alternatively, he sought a new order granting bail. Judge Brieant denied the motion on November 3, 1976. Ostrer appealed that denial, obtaining a stay of his surrender from this Court. The appeal, which raised similar, if not identical, issues as the present appeal, was fully briefed and argued, but in the meantime, on March 28, 1977, the Supreme Court denied review of our affirmance of the denial of the second new trial motion, 430 U.S. 946, 97 S.Ct. 1581, 51 L.Ed.2d 793 (1977), rendering moot Ostrer's appeal on the issue of his custody, which was dismissed.

The Government then noticed Ostrer's surrender for April 15, 1977, which prompted the filing by Ostrer on April 14, 1977, of a petition for a writ of habeas corpus with Judge Brieant, who granted Ostrer bail pending determination of the habeas petition. Judge Brieant denied the petition on August 12, 1977, and at that time extended Ostrer's bail "until the Court of Appeals shall determine Ostrer's appeal . . . or otherwise direct."[1] We affirmed the

---

1. The district court has inherent power to enter an order affecting the custody of a habeas petitioner who is properly before it contesting the legality of his custody. See, e. g., *Johnston v. Marsh,* 227 F.2d 528, 531 (3d Cir. 1955). However, we have held that a habeas petitioner

should be granted bail only in "unusual cases," *Argro v. United States,* 505 F.2d 1374, 1377–78 (2d Cir. 1974), or when "extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective," *Calley v. Callaway,* 496 F.2d

denial of habeas relief on April 18, 1978, and in our decision directed that the mandate issue forthwith. *Ostrer v. United States,* 577 F.2d 782 (2d Cir. 1978).

The Government then noticed Ostrer's surrender for April 28, 1978. Thereupon Ostrer promptly sought from Judge Brieant essentially the same relief that had been requested in November, 1976, namely, an order declaring that his earlier grant of bail (in this case, the August, 1977, order) was still in effect or, in the alternative, a new bail order permitting Ostrer to remain at liberty pending further appellate review.[2] Judge Brieant denied the motions "for want of judicial power," and this appeal followed.

On May 2, 1978, Ostrer moved for bail pending this appeal, which another panel of this Court denied; on the following day Circuit Justice Marshall also denied bail. On May 3, 1978, more than five years after his conviction and sentence, Ostrer surrendered and began service of his sentence.

## DISCUSSION

The custody of habeas petitioners during the pendency of their habeas proceedings is governed by Rule 23(b) of the Federal Rules of Appellate Procedure, which provides in pertinent part that:

"Pending review of a decision failing or refusing to release a prisoner in such a [habeas corpus] proceeding, the prisoner may be detained in the custody from which release is sought, or in other appropriate custody, or may be enlarged upon his recognizance, with or without surety, as may appear fitting to the court or

justice or judge rendering the decision, or to the court of appeals or to the Supreme Court, or to a judge or justice of either court." Rule 23(b), Fed.R.App.P.

Rule 23(d) further provides that "[a]n initial order respecting the custody or enlargement of the prisoner . . . shall govern review in the court of appeals and in the Supreme Court unless for special reasons shown to the court of appeals or the Supreme Court . . . the order shall be modified, or an independent order respecting custody, enlargement or surety shall be made."

Judge Brieant's order of August 12, 1977, permitting appellant to remain at liberty "until the Court of Appeals shall determine Ostrer's appeal from today's orders, or otherwise direct," was a Rule 23(b) order or, as Rule 23(d) describes it, "an initial order respecting . . . custody or enlargement."

Ostrer here contends that this initial order remains in effect or, in the alternative, that the district court still had the power after our mandate has issued to enter a new bail order. We disagree.

 Ostrer argues, first, that in issuing an order pursuant to Rule 23 the district court is limited to enlarging the petitioner on bail or detaining him but it may not place any time limit or other condition on an enlargement order.[3] We reject this strained and unpersuasive interpretation of Rule 23, which represents merely counsel's

701, 702 (5th Cir. 1974), cited in *Galante v. Warden, Metropolitan Correctional Center,* 573 F.2d 707 (2d Cir. 1977). See also *Aronson v. May,* 85 S.Ct. 3, 5, 13 L.Ed.2d 6 (1965) (Douglas, J., in chambers on application for bail).

2. At that time Ostrer's counsel advised the district court that he intended to file in this Court a petition for rehearing, with a suggestion that the rehearing be *en banc.* If those petitions did not result in the sought-for-relief, Ostrer then intended to file a petition for a writ of certiorari in the Supreme Court.

The petition for rehearing with suggestion for rehearing *en banc* was filed on May 1, 1978; it was denied on July 10, 1978.

3. Ostrer's counsel argued at the hearing on the motions in the district court that:

"Even if the initial order was of enlargement only until the end of . . . the evidentiary hearing, not even through the Court of Appeals, our argument is that that initial order coupled with the rule . . . requires that the status quo be maintained, unless the government complies with the rule and gets an order from the Court of Appeals or the Supreme Court changing that status quo. That is our position."

*ipse dixit* and is unsupported by logic, precedent or the language of the rule itself. Nothing in the rule precludes a district judge from placing a reasonable limitation or condition on enlargement, which was done in this case by Judge Brieant when he specified that his order should continue only "until the Court of Appeals shall determine Ostrer's appeal." Upon our affirming the district court's denial of habeas relief the order enlarging Ostrer on bail thereupon expired by its own terms and Ostrer was bound to surrender and start serving his sentence.

■ Ostrer next contends that, assuming Judge Brieant's order expired when we affirmed the denial of habeas relief, the district court still had power to grant a new bail order. The simple answer is that our direction that the mandate issue forthwith, which was entered only after a hearing and determination of Ostrer's appeal, constituted an "independent order respecting . . custody" under Rule 23(d), based on special reasons, namely, that after an extensive review of the record Ostrer's appeal was found by us to be meritless. Thus, even assuming that the district court erred in relying upon a line of cases beginning with *United States v. Ellenbogen,* 390 F.2d 537 (2d Cir.), *cert. denied,* 393 U.S. 918, 89 S.Ct. 241, 21 L.Ed.2d 206 (1968),[4] since the defendants in those cases were not habeas petitioners and hence were not governed by Rule 23, the district court here lacked the power under Rule 23, once we directed that the mandate issue immediately, to grant bail to the habeas petitioner.

The reason for this conclusion is inherent in the nature and purpose of our mandate, particularly when it is issued "forthwith." The mandate of our Court consists of a certified copy of the judgment rendered in the appeal, along with a copy of the Court's opinion, and where applicable, a prepared bill of costs. Rule 41 F.R.A.P. The mandate usually issues 21 days after the entry of judgment, unless a petition for rehearing is filed within 14 days of the judgment's entry, in which even the mandate is automatically stayed until disposition of the petition. *Id.* The effect of the mandate is to bring the proceedings in a case on appeal in our Court to a close and to remove it from the jurisdiction of this Court, returning it to the forum whence it came. The practical effect of the mandate's issuance, at least with respect to appellants facing criminal sentences, is to authorize the executive branch to insure compliance with whatever sentence was imposed by the district court.

■ When we conclude that the issues presented on appeal by a defendant or habeas petitioner are meritless and that the likelihood of the appellant's prevailing in further proceedings in our court or of his obtaining review by the Supreme Court is slim, we frequently direct that our mandate issue "forthwith." Traditionally this has come to mean that based on our careful review of all points raised by the appellant, we are satisfied (1) that our own Court would not change its decision upon rehearing, much less hear the case en banc, and (2) that there is no reasonable likelihood that the Supreme Court would grant review. In such a case the interests of justice are best served by directing, in effect, that the defendant or habeas petitioner commence serving his sentence. As we pointed out in

---

4. *United States v. Scharfman,* 53 F.R.D. 525 (S.D.N.Y.1971); *United States v. Rosa,* 372 F.Supp. 1341 (S.D.N.Y.1974); *United States v. Ostrer,* 386 F.Supp. 159 (S.D.N.Y.1974).

All of these cases involved disputes concerning the extent to which a criminal defendant can invoke the district court's bail-granting power, and obtain an order permitting him to remain at liberty, after action has been taken in the defendant's case by the Court of Appeals and/or the Supreme Court. See, e. g., *United*

States v. Ellenbogen, supra, and *United States v. Scharfman, supra,* where Rule 46(a), F.R. Cr.P. (which has been amended) was held to authorize only the Court of Appeals and the Supreme Court to grant bail to a defendant pending appeal or certiorari to the Supreme Court. Since none of these cases involved habeas petitioners or Rule 23, F.R.A.P., they are not applicable to our decision today, and we have no occasion here to reconsider this line of decisions.

*United States v. Parness,* 536 F.2d 474, 475 (2d Cir. 1976):

"There comes a time in every federal criminal prosecution when a defendant, who has been accorded due process at the three levels of the federal judicial system and whose claims of error have been weighed and found wanting, should be required to serve the sentence which has been imposed upon him according to law. Otherwise, he makes a mockery of federal criminal justice."

The foregoing quotation is particularly appropriate in this case. The district court's conviction of Ostrer, its denial of his motion for a new trial and its dismissal of his habeas petition have all been affirmed by us and the Supreme Court has denied review of the first two of these decisions, see 492 F.2d 70 (2d Cir.), *cert. denied,* 419 U.S. 829, 95 S.Ct. 49, 42 L.Ed.2d 53 (1974), 551 F.2d 303 (2d Cir. 1976), *cert. denied,* 430 U.S. 946, 97 S.Ct. 1581, 51 L.Ed.2d 793 (1977). Having found no merit in his habeas petition, we do not detect any reasonable basis for believing that the Supreme Court would grant certiorari with respect to it. Having in mind also that appellant has for five years succeeded in postponing his surrender on the basis of contentions found to be meritless after a thorough review of the record we were satisfied that it would amount to an abuse of discretion to permit him to remain further at large pending application to the Supreme Court for review of the denial of his latest petition. Accordingly, for good reasons shown in the record before us we directed that the mandate issue forthwith, which constituted an independent order respecting custody within the meaning of Rule 23(d).

■ Under the circumstances, as fully set forth in the record, no further hearing was required as a matter of due process before issuance of the mandate in this case. Ostrer's due process rights have been fully observed at every stage, including hearings and discussions before Judge Brieant in 1976 and again in 1977 on the issue of bail.

The merits of any due process claim depend largely upon the nature of the claimed liberty interest. The eligibility of a habeas petitioner for bail is not on the same footing as that of a pretrial accused who is presumptively innocent, or that of a convicted defendant on direct appeal, both of whom have a right to bail unless the court finds an undue risk of flight, 18 U.S.C. § 3146, and undue risk of danger to the community, 18 U.S.C. § 3148, or that the appeal is frivolous or taken for delay. *Id.* As Justice Douglas stated in *Aronson v. May,* 85 S.Ct. 3, 5, 13 L.Ed.2d 6 (1964):

"This applicant is incarcerated because he has been tried, convicted, and sentenced by a court of law. He now attacks his conviction in a collateral proceeding. It is obvious that a greater showing of special reasons for admission to bail pending review should be required in this kind of case than would be required in a case where applicant had sought to attack by writ of habeas corpus an incarceration not resulting from a judicial determination of guilt. . . . [I]t is therefore necessary to inquire whether, in addition to there being substantial questions presented by the appeal, there is some circumstance making this application exceptional and deserving of special treatment in the interests of justice." (Citations omitted).

No such circumstance appears in the present case.

The order of the district court is affirmed.