**Slip Op. 00-151**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE GREGORY W. CARMAN, CHIEF JUDGE**

_____
                                          :
**LACLEDE STEEL CO., <u>et al.,</u>**        :
                                          :
                 **Plaintiffs,**             :
                                          :
     **v.**                               :
                                          :
**UNITED STATES,**                 :           **Consol. Court No. 93-09-00569-CVD**
                                          :
                 **Defendant,**             :
                                          :
       **and**                            :
                                          :
**DONGBU STEEL CO.**              :
**LTD., <u>et al.,</u>**                     :
                                          :
                 **Defendant-**            :
                 **Intervenors.**   :
_____:

[Commerce's Remand Redetermination is affirmed in its entirety.  Plaintiffs' request to affirm the Remand Redetermination is granted; Defendant-Intervenors' challenge is rejected; Defendant-Intervenors' motion for leave to reply to responses by Defendant and Plaintiff is denied.]

Korean steel manufacturers challenge United States Department of Commerce's (Commerce) Remand Redetermination, arguing Commerce has, in recalculating countervailing duties owed in conformity with *AK Steel Corp. v. United States*, 192 F.3d 1367 (Fed. Cir. 1999) (*AK Steel*), unlawfully distinguished between private domestic loans and government-sourced domestic loans.  The United States and domestic steel producers respond Commerce's Remand Redetermination should be affirmed in its entirety.  This Court affirms Commerce's Remand Redetermination in its entirety and denies Korean steel manufacturer's motion for leave to reply to responses by the United States and domestic steel producers.

Dated: November 13, 2000

*Dewey Ballantine LLP* (*John A. Ragosta, Jennifer Danner Riccardi,* and *Navin Joneja*) Washington, D.C., for Plaintiffs.

*David W. Ogden*, Assistant Attorney General of the United States; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, Department of Justice; *A. David Lafer*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, Department of Justice; *William L. Olsen*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice; *Cindy Buys*, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Counsel, for Defendant.

*Kaye, Scholer, Fierman, Hays & Handler LLP* (*Donald B. Cameron, Julie C. Mendoza,* and *Margaret E. Scicluna*), Washington, D.C. for Defendant-Intervenors.

## OPINION

**CARMAN, Chief Judge:**  This Court upholds the conclusions of Commerce in *Final Results of Redetermination on Remand Pursuant to Laclede Steel Co., et al. v. United States* (Ct. Int'l Trade, Apr. 5, 2000) (Remand Redetermination).  This Court grants Plaintiffs' (Domestic Producers) request that the Remand Redetermination be affirmed in its entirety and denies Defendant-Intervenors' (Korean Respondents) request for a remand to Commerce to recalculate company-specific and countrywide *ad valorem* rates with respect to all domestic loans received by the Korean steel industry after 1984.  Also denied is Korean Respondents' motion for leave to reply to the responses by United States and Domestic Producers.

BACKGROUND

In *British Steel P.L.C. v. United States*, 941 F. Supp. 119, 130 (Ct. Int'l Trade, 1996) (*British Steel II*), this Court upheld Commerce's determination in *Certain Steel Products from Korea*, 58 Fed. Reg. 37,338 (July 9, 1993) (*Final Determination*) that the Korean government program of general control over the Korean financial system provided industry-specific benefits to Korean Respondents in the form of preferential access to long-term loans.  To countervail the governmental subsidy, Commerce met the three requirements of 19 U.S.C. § 1677(5) (1988),

demonstrating the program was: (1) a government action; (2) that conferred a benefit; (3) upon a specific industry. Because of the indirect nature of the subsidy, this Court had further required Commerce to demonstrate the existence of a causal nexus between the government program and the steel industry's preferential access to credit. *See British Steel P.L.C. v. United States*, 879 F. Supp. 1254, 1326, 1328 (Ct. Int'l Trade, 1995) (*British Steel I*). Commerce attempted to do so in *Final Results of Redetermination Pursuant to Court Remand in British Steel P.L.C. v. United States* (Ct. Int'l Trade, February 9, 1995) (First Remand). This Court upheld Commerce's findings. *See British Steel II*, 941 F. Supp. at 129-130.

Korean Respondents challenged Commerce's determinations on appeal. The United States Court of Appeals for the Federal Circuit (CAFC) reversed the portion of this Court's decision in *British Steel II* upholding Commerce's finding of a causal nexus between the Korean government's control of the financial system and the domestic loans received by the steel industry from private sources. *See AK Steel*, 192 F.3d at 1376. It also reversed the portion of this Court's judgment "affirming the assessment of countervailing duties based on preferential access to foreign credit." *Id*. at 1378. Pursuant to 28 U.S.C. § 1651 (1994), this Court remanded the matter to Commerce to recalculate duties owed in conformity with the CAFC's decision in *AK Steel*. *See Laclede Steel Co., et al. v. United States*, Slip Op. 00-36 (April 5, 2000).

Conformity with the CAFC's decision required Commerce to exclude from its calculations those countervailing duties based upon: (1) domestic credit provided to the Korean steel industry by private Korean lenders; and (2) preferential access to foreign credit. *See AK Steel*, 192 F.3d at 1376, 1378. Commerce also determined the CAFC's holding "related only to foreign loans and domestic loans received by the steel industry from private sources during the *de*

*facto* period [after 1984]."[1]  (Remand Redetermination at 3.)  Accordingly, Commerce removed

from its net subsidy calculations any loans made by private Korean lenders after 1984 and all

direct foreign loans.  *See id.*  It continued to include post-1984 domestic loans from the following

government banks and programs:  Korean Development Bank (KDB), Korean Exchange Bank

(KEB), Export-Import Bank of Korea (ExIm), Korea Development Finance Corporation (KDFC),

National Investment Fund (NIF), Energy Saving Fund (ESF), Petroleum Business Fund (PBF),

and Export Industry Facility Loans (EIFL).  *See id.*

Commerce issued its Draft Remand, provided the parties with opportunity to comment,

and addressed the parties' comments in the final Remand Redetermination.  *See id.* at 2, 6.

Korean Respondents challenge Commerce's Remand Determination, arguing Commerce

has unlawfully distinguished between the private domestic loans and the government-sourced

domestic loans.  (Dongbu Steel Co., Ltd., *et al.* Comments Upon the Final Results of

---

[1]The *de facto* period contrasts with the *de jure* preference period in which the
Korean government overtly promoted the steel industry through laws and programs.  *See
Final Results of Redetermination Pursuant to Court Remand in British Steel P.L.C. v.
United States* (Ct. Int'l Trade, February 9, 1995) at 24-29 (First Remand) *and Certain
Steel Products from Korea*, 58 Fed. Reg. 37,338, 37,342-3 (Dep't Comm. July 9, 1993)
(*Final Determination*).  Commerce previously determined the Korean government
continued to provide the steel industry with preferential access to long-term credit despite
removal of the legal preferences, resulting in a *de facto* program of specific benefits to the
steel industry.  (First Remand at 29); *Final Determination*, 58 Fed. Reg. at 37,343.  The
CAFC acknowledged that government control of the financial system benefitted the
Korean steel industry until 1985, by which time the *de jure* preferences had been
terminated.  *See AK Steel* at 1371, 1376.  The parties therefore concede Commerce must
bring only those loans received by the steel industry after 1984, the *de facto* period, into
conformity with the CAFC decision.  (Dongbu Steel Co., Ltd., *et al.* Comments Upon the
Final Results of Redetermination at 14 (Korean Respondents' Br.)); (Domestic
Producers' Brief in Response to Dongbu Steel Co. *et al.*'s Comments upon the Final
Results of Redetermination Pursuant to Court Remand at 18-19 (Domestic Producers'
Resp.).)

Redetermination at 1 (Korean Respondents' Br.).) The United States and Domestic Producers respond that Commerce's distinction between the private domestic loans and the government-sourced domestic loans is consistent with the CAFC's decision. (Defendants' Response to Comments of Dongbu Steel Co. Ltd. *et al*. on the Final Results of Redetermination Pursuant to Court Remand at 2-3 (Defs.' Resp.)); (Domestic Producers' Brief in Response to Dongbu Steel Co. *et al*.'s Comments upon the Final Results of Redetermination Pursuant to Court Remand at 2 (Domestic Producers' Resp.).)

JURISDICTION

Because the CAFC's judgment contained no remand order, this Court derives its jurisdiction, in part, from the "mandate rule" wherein the "[i]ssuance of the mandate formally marks the end of appellate jurisdiction," and "[j]urisdiction returns to the tribunal to which the mandate is directed, for such proceedings as may be appropriate . . . ." *Carlson v. Hyundai Motor Co.*, 222 F.3d 1044, 1045 (8th Cir. 2000), *quoting Johnson v. Bechtel Associates, et. al.*, 801 F.2d 412, 415 (D.C. Cir. 1986). After the CAFC issued its mandate, jurisdiction passed from the CAFC and returned "to the forum from whence it came." *Ostrer v. United States*, 584 F.2d 594, 599 (2d Cir. 1978). Jurisdiction therefore again vested with this Court.

This Court also derives its jurisdiction from the language of the opinion in *AK Steel.* In order to give effect to the CAFC's specific exclusion of private domestic loans from the countervailing duty determination, Commerce must recalculate the duties owed by Korean Respondents. By not explicitly directing the recalculation, the CAFC left to this Court the task of ordering and reviewing Commerce's recalculation of the countervailing duties. In *Exxon Chemical Patents, Inc. v. The Lubrizol Corp.*, 137 F.3d 1475, 1483 (Fed. Cir. 1998), the CAFC

found the lack of an explicit remand order did not preclude additional proceedings in the district court. Rather, "every appellate court judgment vests jurisdiction in the district court to carry out some further proceedings." *Id.* The nature of those proceedings "is discerned not simply from the language of the judgment, but from the judgment in combination with the accompanying opinion." *Id.*, *citing In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256 (1895).

The scope of this Court's jurisdiction is narrow. In implementing the higher court's mandate, this Court "cannot vary it, or examine it for any other purpose than execution." *In re Sanford Fork & Tool Co.*, 160 U.S. at 255. This Court, therefore, will merely consider whether Commerce's Remand Redetermination conforms with *AK Steel* and nothing beyond the scope of that decision.

CONTENTIONS OF THE PARTIES

*A.      Korean Respondents*

Korean Respondents first contend that because the interpretation of the CAFC decision is a legal issue that does not involve agency expertise, the Court should afford no deference to Commerce's determination. (Korean Respondents' Br. at 10.) Instead, they reason, the Court should approach the Remand Redetermination with heightened scrutiny. *See id.*

Korean Respondents next make two arguments contending Commerce has unlawfully interpreted the CAFC's decision by distinguishing between private domestic loans and government-sourced domestic loans. *See id.* at 11. First, Korean Respondents argue that although the CAFC decided upon all the issues before it, direct subsidies were not among them. Korean Respondents state, "[T]he 'program' appealed was an 'indirect' subsidy accomplished through control of the entire Korean financial system." *Id.* at 12. To separate private loans from

the program, Korean Respondents seem to suggest, would convert government loans into direct subsidies. Korean Respondents contend that because Commerce presented no evidence of direct subsidies to this Court or the Court of Appeals, the Court of Appeals had no reason to place significance upon a distinction between government and private sources of the loans. *See id*. at 12-13. Korean Respondents argue that Commerce may not now place significance upon the distinction. *See id*. at 13.

Second, Korean Respondents argue the CAFC did not affirm any aspect of this Court's holding in *British Steel II* regarding domestic loans. *See id*. at 13. Respondents claim the CAFC reversed this Court's judgment regarding domestic loans in whole and could not have separately affirmed a finding on government-sourced domestic loans because Commerce never made the distinction in the history of the case. *See id*. at 14-15. Respondents contend Commerce provided a new theory for the distinction by identifying the government loans as direct subsidies. *See id*. at 18. Korean Respondents charge that "Commerce has never made the requisite findings for determining that government loans are a direct subsidy nor does the CAFC's decision grant to them the authority to do so now." *Id*. at 21.

B.      *Defendant United States*

The United States makes three arguments. It first argues Commerce's assessment of countervailing duties against loans provided by government banks and programs conforms with the CAFC's decision. (Defs.' Resp. at 3.) For support, the United States asserts that before finding an indirect subsidy is countervailable, Commerce must make all necessary determinations for a direct subsidy. *See id.* at 4. Here, the United States maintains, the CAFC only held there was insufficient evidence to support the additional causal nexus finding required

for an indirect subsidy. *See id.* at 5. The United States also notes the CAFC expressly limited its holding to the portion of this Court's judgment pertaining to private loans. *See id.* at 6. The United States contends that Korean Respondents' reading is too broad because it precludes the assessment of countervailing duties against any domestic loans. *See id.*

Second, the United States argues that, contrary to Korean Respondents' argument that Commerce never distinguished between the domestic loans from private and government banks, Commerce did distinguish between the two types of loans in the First Remand. *See id.* at 7. The United States asserts that despite Commerce's reference to a program of general government control over the financial system, the program "explicitly encompassed loans from both government-owned and private banks." *Id*. at 8. The United States urges that only after the CAFC rejected Commerce's causal nexus finding was it necessary to distinguish the government loans in the Remand Redetermination. *See id.* at 9.

Finally, the United States counters Korean Respondents' argument that Commerce did not make a sufficient finding of specificity for the loans from the Korean government banks and programs.[2] The United States contends this Court upheld Commerce's conclusion that the steel industry received a specific benefit of access to credit through the Korean government's control of the financial system, and the CAFC never questioned the finding. *See id.* at 10.

_____

[2]To demonstrate receipt of industry-specific benefits by the steel industry, Commerce "compared the steel industry's percentage share of available loans with its percentage share of the gross domestic product (GDP)," thereby determining the steel industry "was receiving a disproportionate share of the long-term loans from the entire Korean financial market." (First Remand at 40-41.) Commerce also compared long-term lending to the steel industry during the *de jure* subsidization period with long-term lending to the steel industry during the *de facto* period and found a slight increase in loans to the steel industry in the latter period. *See id.* at 41-43.

C.      *Domestic Producers*

Domestic Producers make six arguments.  First, Domestic Producers argue that no direct

authority exists for Korean Respondents' call for heightened scrutiny and that the standard of

judicial review set forth in 19 U.S.C. § 1516a(b)(1)(B) (1995) controls final countervailing duty

determinations by Commerce (a reviewing court must "hold unlawful any determination, finding,

or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not

in accordance with law").  (Domestic Producers' Resp. at 4-5.)

Second, Domestic Producers contend that all parties, including Korean Respondents,

have distinguished between government and private lenders throughout the proceedings.  *See id.*

at 5-9.  In addition, Domestic Producers assert they presented the distinction to the CAFC in their

brief, and the government's lawyer presented it to the CAFC at oral argument.  *See id.* at 9.

Domestic Producers next contend the Remand Redetermination is consistent with the

CAFC's opinion for the following reasons:  (1) the CAFC's opinion "does not compel a finding

that no domestic loan is countervailable in this proceeding"; (2) the CAFC understood the

requirements for countervailability and focused upon the causal nexus requirement for indirect

subsidies without reversing findings for the direct subsidy of government loans; and (3) silence

by the CAFC regarding direct subsidies indicates affirmation of this Court's decision on that

issue. *See id.* at 11-13.

Fourth, Domestic Producers contend Commerce's Remand Redetermination is consistent

with the concept of "program" because:  (1) despite Korean Respondents' claim of a single

program on appeal, Domestic Producers and the government presented the distinction between

government and private loans to the CAFC, and the CAFC limited its opinion to loans from

private sources; (2) Commerce has not rigidly analyzed all loans as a single program but has instead used "program" as a convenient umbrella term for many different types of loans; and (3) even if Commerce had treated the loans as indistinguishable parts of one program, the holding by the CAFC that some of the loans were non-countervailable did not render the entire subsidy program non-countervailable. *See id*. at 13-15.

Fifth, Domestic Producers claim Commerce's Remand Redetermination meets all requirements for finding a countervailable subsidy because: (1) Commerce previously treated all loan programs as direct subsidy programs and identified government loans as direct subsidies; (2) the CAFC opinion nowhere rejects Commerce's findings of government action, benefit, and specificity; and (3) record evidence supports a specificity finding for each government bank and program. *See id*. at 15-18.

Finally, Domestic Producers contend Commerce received no directed remand order limiting its recalculations to the exclusion of all loan programs. *See id*. at 19. Domestic Producers argue that preventing Commerce from distinguishing between government and private loans would be inconsistent with Korean Respondents' concession that *de jure* era loans should remain in the calculations. *See id*.

STANDARD OF REVIEW

In reviewing a remand redetermination by Commerce, this Court will hold unlawful any determination found "to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. §1516a(b)(1)(B)(i)(1994). *See also British Steel, P.L.C. v. United States*, 929 F. Supp. 426, 431 (Ct. Int'l Trade, 1996) ("The appropriate standard for the Court's review of a remand determination by Commerce is whether the agency's determination is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'")(citations omitted).

DISCUSSION

In *British Steel II*, this Court held a government program of general control over the Korean financial system provided a countervailable benefit to the Korean steel industry in the form of preferential access to long-term loans from foreign lenders and domestic private and government lenders. 941 F. Supp. at 130. To countervail the governmental subsidy, Commerce met the three requirements of 19 U.S.C. § 1677(5)(B) (1988), demonstrating: (1) government action; (2) conferred a benefit; (3) upon a specific industry. This Court also held that Commerce met the additional requirement for an indirect subsidy program of demonstrating a "causal nexus" between the government program and the steel industry's preferential access to credit. *See British Steel II*, 941 F. Supp. at 130.

The CAFC disagreed with this Court's finding of a causal nexus with respect to domestic private loans. Accordingly, the CAFC specifically limited its reversal to those loans received from private sources: "Commerce's conclusion that there is a causal nexus between the Korean government's control of the financial system and the domestic loans received by the steel

industry *from private sources*, is unsupported by substantial evidence[,]" and "[t]he portion of the Court of International Trade's judgment sustaining the imposition of countervailing duties based on domestic credit provided to the Korean steel industry by *private Korean lenders* therefore must be reversed." *AK Steel*, 192 F.3d at 1376 (emphasis added).

The CAFC did not reverse this Court's entire holding that the Korean government program provided a countervailable benefit to the Korean steel industry. It left untouched that portion of the program providing preferential access to long-term loans from domestic government lenders. Therefore, in removing only those loans provided by foreign lenders and domestic private lenders from its recalculations, Commerce obeyed this Court's remand order to recalculate duties owed in conformity with the CAFC's decision. This Court holds that Commerce's conclusions in its Remand Redetermination are supported by substantial evidence and otherwise in accordance with law.

Korean Respondents incorrectly contend the CAFC affirmed no aspect of this Court's holding in *British Steel II* regarding domestic loans. (Korean Respondents' Br. at 14.) As the United States correctly notes, "The Federal Circuit expressly limited its holding to 'the portion of the Court of International Trade's judgment sustaining the imposition of countervailing duties based on domestic credit provided to the Korea[n] steel industry by *private* Korean lenders.'" (Defs.' Resp. at 6, *quoting AK Steel*, 192 F.3d at 1376 (emphasis added).) By reversing only the part of this Court's holding in *British Steel II* regarding domestic loans from private sources, the CAFC affirmed this Court's holding regarding domestic loans from government sources.

This Court will not address whether the government-sourced domestic loans are direct subsidies. In *British Steel II*, this Court rejected Respondents' arguments on the issue because it

had "already sustained Commerce's finding of a government program." 941 F. Supp. at 133.

This Court's holding in *British Steel II* and the CAFC's silence regarding direct subsidies in *AK Steel* place the issue outside the scope of this Court's jurisdiction.

CONCLUSION

This Court finds Commerce's recalculation of the subsidy conferred upon the Korean steel industry by: (1) removing any loans from private Korean lenders made after 1984; (2) removing all direct foreign loans; and (3) continuing to include loans provided by government banks and programs, is supported by substantial evidence on the record and otherwise in accordance with law. Accordingly, Defendant-Intervenors' challenges are rejected, and Commerce's Remand Redetermination is affirmed. Plaintiffs' request that the Remand Redetermination be affirmed in its entirety is granted. Defendant-Intervenors' motion for leave to reply to responses by Defendant and Plaintiff is denied.

_____
Gregory W. Carman
Chief Judge

Dated: _____
        New York, New York