07-0149-cr
USA v. Zedner

POOLER, <u>Circuit Judge</u>, dissenting:

I respectfully dissent.

The majority fails to address a decisive issue in this case: whether the district court lacked jurisdiction to enter the judgment from which Zedner is appealing. As the Supreme Court explained in <u>Steel Co. v. Citizens for a Better Environment</u>:

> Every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review . . . . And if the record discloses that the lower court was without jurisdiction this court will notice the defect . . . . <u>When the lower federal court lacks jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.</u>

523 U.S. 83, 95 (1998) (emphasis added; quotation marks, citations, and alterations omitted).

This rule has been embedded in our courts for well over a century:

> [T]he rule, springing from the nature and limits of the judicial power of the United States, is inflexible and without exception which requires this court, of its own motion, to deny its own jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record on which, in the exercise of that power, it is called to act.

<u>Mansfield, C. & L. M. Ry. Co. v. Swan</u>, 111 U.S. 379, 382 (1884). We are therefore obligated to determine, as a threshold matter, not only whether we have jurisdiction to hear this matter, but also whether the district court properly had jurisdiction.[1]

---

[1] Nothing in the Supreme Court's recent decision in <u>Sinochem International Company, Limited v. Malay International Shipping Corporation</u>, 127 S. Ct. 1184 (2007) undermines this rule as it applies to this case. While the Supreme Court stated that "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits," <u>id.</u> at 1191 (quotation marks omitted), the Court explicitly limited the scope of this statement by explaining that, "[i]f, however, a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground. In the mine run of cases, jurisdiction will involve no arduous inquiry and both judicial economy and the consideration ordinarily accorded the plaintiff's choice of forum should impel the federal court to dispose of

Following the Supreme Court's decision, in <u>Zedner v. United States</u>, 547 U.S. 489, 509 (2006) ("<u>Zedner IV</u>"), to reverse Zedner's 2003 conviction, Zedner moved in our Court to have his case remanded to a different district court judge. We denied the motion in an order entered on September 19, 2006 and remanded the case to the district court in accordance with the Supreme Court's decision in <u>Zedner IV</u>. <u>United States v. Zedner</u>, No. 04-0821 (2d Cir. Sept. 19, 2006) ("<u>Zedner V</u>"). As the majority notes, **Majority Op.**, **4**, normally the mandate will issue 21 days after such a decision is entered. <u>See</u> Fed. R. App. P. 41(b)-(c), 40(a)(1). However, in this case, the Clerk of our Circuit did not issue the mandate until February 1, 2007.[2]

"The effect of the mandate is to bring the proceedings in a case on appeal in our Court to a close and to remove it from the jurisdiction of this Court, returning it to the forum whence it came." <u>Ostrer v. United States</u>, 584 F.2d 594, 598 (2d Cir. 1978). The rule of our Court is that "[a] district court does not regain jurisdiction until the issuance of the mandate by the clerk of the court of appeals." <u>United States v. Rodgers</u>, 101 F.3d 247, 251 (2d Cir. 1996). "Simply put, jurisdiction follows the mandate." <u>United States v. Rivera</u>, 844 F.2d 916, 921 (2d Cir. 1988). Therefore the district court did not regain jurisdiction over Zedner's case until February 1, 2007 -

those issues first." <u>Id.</u> at 1194 (quotation marks and alterations omitted). Here, as I will explain, it is indisputable that the district court lacked jurisdiction over Zedner when it entered a judgment against him. Furthermore, unlike in the context of dismissals for <u>forum non conveniens</u>, our review power over Zedner's appeal has been explicitly limited by the Supreme Court in such matters. <u>Steel Co.</u>, 523 U.S. at 95. Thus the scope of our review of this case is properly limited to addressing whether the lower court had jurisdiction over Zedner when it entered its final judgment.

[2] The record does not explain why this four-month delay occurred. There are, however, important and substantive reasons why such a delay could occur. For example, if our Court was considering whether to hear the panel's decision <u>en banc</u> a lengthy delay in the issuance of the mandate might occur. Alternatively, an active judge of the Court might have put a "hold" on the mandate.

- three weeks <u>after</u> the district court entered its final judgment on January 12, 2007. As such, the judgment entered on January 12, 2007 is a nullity because it was entered before the mandate was issued by our Court.[3]

Rather than addressing this dispositive issue, the majority notes, in passing, that "[t]he mandate, however, which normally would have issued 21 days [after our September 19, 2006 order], see Fed. R. App. P. 41(b)-(c), 40(a)(1), did not issue until February 1, 2007." **Majority Op., 4.** Contrary to the majority's implication, the fact that a mandate is "normally" issued 21 days after an order is entered is irrelevant. We have previously rejected the argument that an appeal becomes final on the day that the summary order is issued, or on the day that the mandate should have been issued under Federal Rule of Appellate Procedure 41. Rivera, 844 F.2d at 919-

---

[3] In a letter to our Court pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, the government argues that the mandate rule is a court-created rule of practice and procedure and thus is not jurisdictional. In making this argument, the government cites to our recent decision in United States v. Frias, 521 F.3d 229 (2d Cir. 2008). The government's argument is flawed. The Supreme Court has not overruled our longstanding rule that a district court lacks jurisdiction prior to the issuance of the mandate. And, as the Frias court recognized "[w]e are bound by the decisions of prior panels until such time as they are overruled by an en banc panel of our Court or by the Supreme Court." Id. at 232, n.3 (quotation marks omitted). Furthermore, Frias limited its discussion to situations involving time limits, not mandates. Id. at 231-34. This distinction is important. Consider, for instance, the hypothetical provided in footnote two of my dissent. If our Court had, in fact, been in the process of deciding whether to consider our September 19, 2006 decision en banc then the mandate would not have issued 21 days after the entry of judgment. If our Court had thereafter decided to hear the matter en banc, while the district court had nonetheless held a trial despite lacking the mandate to do so, chaos would have ensued. We have thus recognized the importance of this rule, noting that the "issuance of the mandate is an event of considerable institutional significance . . . ." Rivera, 844 F.2d at 921. For this reason and others, the issuance of a mandate carries greater relevance in determining jurisdiction than judicially prescribed "time limits." While the Frias court explicitly concluded that our prior rulings on the issue in Frias had been effectively overruled by the Supreme Court, Frias, 521 F.3d at 232 n.3, no such determination has been made regarding the mandate rule, and thus, our rule remains firmly intact.

20. We have made clear that:

> Because issuance of the mandate is an event of considerable institutional significance, particularly since enactment of the Speedy Trial Act, we are unable to say . . . that the mandate "issued" simply because it should have been issued, or because the panel may have intended it to issue, or because the statute commands it to issue.

Id. at 921. Acknowledging the rule of Rivera, we have stated that a district court "cannot entertain a motion . . . before this Court issues its mandate. In other words, we must act first and return this case to the [d]istrict [court] . . . ." Doe v. Gonzales, 449 F.3d 415, 420 (2d Cir. 2006).

With limited exceptions, the mandate rule is firm: jurisdiction does not return to a district court until the mandate has been issued. The exceptions to the mandate rule have been limited to situations that vary greatly from the circumstances here. For example, we have held that the filing of a notice of appeal from an order that was "patently nonappealable" in the first place did not divest the district court of jurisdiction. Rodgers, 101 F.3d at 251-52 ("We fail to see any efficiency in allowing a party to halt district court proceedings arbitrarily by filing a plainly unauthorized notice of appeal which confers on this court the power to do nothing but dismiss the appeal." (emphasis added)); see also Burger King Corp. v. Horn & Hardart Co., 893 F.2d 525, 527 (2d Cir. 1990); Leonhard v. United States, 633 F.2d 599, 610-111 (2d Cir. 1980). We have also held that the district court retains jurisdiction to issue a permanent injunction during an appeal from an order granting or denying a preliminary injunction. Webb v. GAF Corp., 78 F.3d 53, 55 (2d Cir. 1996); N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1350 (2d Cir. 1989) ("[W]e have held that the filing of a notice of appeal only divests the district court of jurisdiction respecting the questions raised and decided in the order that is on appeal."). None of these exceptions are applicable here. Accordingly, the final judgment entered on January 12,

2007 is a nullity.[4]  Similarly, Zedner's notice of appeal, which was filed on January 12, 2007 and

entered on January 18, 2008, is also a nullity because it also took place before the mandate

issued.  Therefore, jurisdiction for this case, including any applicable motions, now properly lies

before the district court, pursuant to our order dated September 19, 2006.  See also Ortega-

Rodriguez v. United States, 507 U.S. 234, 251 (1993) ("[F]ugivity while a case is pending before

a district court, like other contempts of court, is best sanctioned by the district court itself.").

In addition to this determinative issue of the district court lacking the mandate, Zedner

appeals his conviction on numerous non-frivolous grounds.  As explained previously, I believe

that because the district court lacked jurisdiction over this matter, we are obligated to correct that

error and, accordingly, we are not permitted to reach the merits of either Zedner's appeal or the

government's motion to dismiss under the fugitive disentitlement doctrine.  See Steel Co., 523

U.S. at 95.  Nonetheless, assuming arguendo that we did have jurisdiction to decide the merits of

the appeal or the government's motion to dismiss, I would still be deeply troubled by the

majority's decision to use its discretion -- illusory as it is -- to dismiss Zedner's appeal under the

fugitive disentitlement doctrine.

Zedner is mentally ill.[5]  Over a decade ago he attempted to cash fake checks in the

amount of ten million dollars.  These fraudulent Treasury bonds were particularly notable

because they included numerous misspellings and were purportedly issued by the non-existent

---

[4] The haste with which Zedner was re-tried, without waiting for the mandate to arrive, might be understandable in view of the fact that his first trial was vacated for failure to comply with the Speedy Trial Act.

[5] Because of Zedner's long history with mental health problems, an "additional supervised release term,[]" was that "[t]he defendant shall receive extensive mental health therapy including in-patient treatment, if necessary at the discretion of the probation department."

"Ministry of Finance of U.S.A." None of the financial institutions, which Zedner was charged with attempting to defraud, were at all misled by these "patently fraudulent" bonds. **Majority Op., 3**. Nonetheless, the government proceeded to bring criminal charges, carrying a maximum term of thirty years of imprisonment, against Zedner. It was clear to everyone involved in this case, at various points during its tortured eleven-year history, that Zedner is severely delusional. I agree with the district court when it stated, in overseeing the government's first prosecution of Zedner: "It seems like a miscarriage in a way of what I perceive to be justice, that you are perhaps prosecuting someone who in my book doesn't have the appropriate capacity to defend himself or know what he is doing." To compare Zedner to a bail jumper as the majority does, is to misapprehend his ability to act rationally. After all, should Zedner lose his appeal, the majority wants him back to serve the balance of his supervised release period getting mental health services.

> Under the fugitive disentitlement doctrine, a court has <u>discretion</u> to refuse to rule on the merits of a defendant's post-conviction claims of trial error when the defendant has fled from justice. The doctrine serves four rationales: 1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape.

<u>United States v. Morgan</u>, 254 F.3d 424, 426 (2d Cir. 2001) (emphasis added; quotation marks and citations omitted).

I disagree strongly with the majority's decision to exercise its "discretion" to deny Zedner's appeal. This is not a case where we do not know where the defendant is, <u>see</u> <u>United States v. Awadalla</u>, 357 F.3d 243, 246 (2d Cir. 2004), rather we know that Zedner is in Israel and we know that he has been in touch with both his probation officer and his lawyer. Additionally,

Page -6-

Zedner did not "flout[] the judicial process" such that we must use his case as an example to discourage "flights from justice." Morgan, 254 F.3d at 426. Zedner asked for permission to go to Israel for his brother's funeral. Thereafter, he has been unable to return because of: 1) issues with his visa, and 2) trouble with the Israeli police. While these justifications for Zedner's failure to return to the United States might appear disingenuous in certain circumstances, Zedner is not the average defendant. Rather, the record is replete with evidence that he has severe mental problems and is delusional. Furthermore, as far as prejudice to the government is concerned, Zedner's presence in Israel is completely irrelevant to our ability to decide the merits of his appeal. Here, the trial is completed and there are only legal issues on appeal. Thus, the government would not be prejudiced in any way by our reaching the merits of Zedner's appeal.[6] Therefore, even if I believed that we had jurisdiction to address the government's motion to dismiss, I would not agree with the majority's decision to grant the motion in this case.

Unfortunately, however, my disappointment with the majority opinion does not end here. I am also profoundly troubled by its ungenerous decision to dismiss Zedner's appeal with prejudice. As the Supreme Court's decision in 2006 to reverse Zedner's 2003 conviction because it violated the Speedy Trial Act should indicate, Zedner has had a long and tortured history with our judicial system. I can think of no worse ending to this matter than what the majority has unreasonably decided to do.

---

[6] The majority notes that there is a possibility of prejudice to the government in the form of needing to locate witnesses and resurrect their recollections in the event of a new trial. **Majority Op., 20.** However, even the majority recognizes the weakness of this argument, given that the original violations of the Speedy Trial Act resulted in a retrial here that was over ten years after Zedner was first arrested for this offense.

**A few words on the majority's comments on this dissent.**

Before concluding, I will briefly respond to the majority's comments on this dissent. The majority states that this case raises the "question as to the timing of the respective jurisdictions of this Court and the district court," **Majority Op. at 24**, and I agree. However, the answer to that question is simple: a "district court does not regain jurisdiction until the issuance of the mandate by the clerk of the court of appeals." Rodgers, 101 F.3d at 251. Thus the question of "timing of jurisdiction," a term which the majority coins, without citation, and for which I can locate no reference as a distinct concept in Black's Law Dictionary or our case law, cannot be separated from the question of whether the district court had jurisdiction to enter a judgment against Zedner. The majority also asserts that I provide only one citation for the proposition that the threshold question is whether we have jurisdiction, ignoring the cases I cite to throughout my dissent. **Dissent 1-4**. Then the majority cites to S.E.C. v. Berger, 322 F.3d 187 (2d Cir. 2003) for the proposition that we can consider the fugitive disentitlement doctrine prior to considering jurisdiction. However, Berger does not compel that conclusion. As already noted, where a court can readily determine jurisdiction, it should do so. Sinochem, 127 S. Ct. at 1191; **Dissent 1 n.1**. Ascertaining jurisdiction in Berger was more complicated; here it simply involves identifying the date on which the mandate issued. Moreover, Berger did not face the question of jurisdiction as it relates to the issuance of the mandate. As stated, this scenario raises unique concerns. **Dissent 2 n.2, 3 n.3**. [7]

In any event, as already stated, a deeply troubling aspect of this case is the majority's

_____

[7] Despite our disagreement, it should be clear from the majority opinion that it does not set forth a new rule under which a district court may restart proceedings prior to receiving the mandate. See Rivera, 844 F.2d at 921.

decision to use its discretion to dismiss this appeal -- one brought by a person who is mentally challenged -- and, to do so with prejudice.  In responding to my dissent, the majority states that Zedner is not "entitled to have his appeal decided," asserting that it would be unacceptable to decide the appeal and have "Zedner thumb his nose at the decision."  **Majority Op. 25, 26**.  At the same time, the majority assumes as true that Zedner's failure to return to the United States was in part a result of his mental illness.  **Majority Op. 19**.  I have already stated the reasons why Zedner does not fall within the rationales served by the fugitive disentitlement doctrine.  I now simply emphasize that our discretion is used unwisely when a person who lacks the capacity for rational thought is deemed unworthy of having his appeal decided even though his fugitive status is attributable to mental illness.  Such an individual cannot be said to be deserving of the "impos[ition of] a penalty for flouting the judicial process."  Awadalla, 347 F.3d at 245; **Majority Op. 16, 21**.  In these circumstances, even if the case could be made for dismissing Zedner's appeal, there can be no justification for doing with prejudice.  **Majority Op. 23**.

For the foregoing reasons, I respectfully dissent.