20-3430-pr
*Canfield v. United States*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of March, two thousand twenty-two.

PRESENT:  DENNIS JACOBS,
          JOSÉ A. CABRANES,
          SUSAN L. CARNEY,
                    *Circuit Judges.*

_____

RYAN CANFIELD,

                    *Petitioner-Appellant,*          20-3430-pr

          v.

UNITED STATES OF AMERICA,

                    *Respondent-Appellee.*

_____

FOR PETITIONER-APPELLANT:          Ryan Canfield, pro se, Minersville, PA.

FOR RESPONDENT-APPELLEE:           Rajit S. Dosanjh, Assistant United States Attorney, *for* Carla B. Freedman, United States Attorney, Northern District of New York, Syracuse, NY.

Appeal from an order of the United States District Court for the Northern District of New York (David N. Hurd, *Judge*).

1

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the District Court be and hereby is **AFFIRMED**.

Appellant Ryan Canfield, proceeding pro se, appeals the district court's order denying his 28 U.S.C. § 2255 motion for a writ of habeas corpus. Canfield was convicted after a jury trial of one count of conspiracy to distribute and possess with intent to distribute methylone, 21 U.S.C. § 846, and eight counts of use of a communication facility to facilitate commission of a Controlled Substances Act felony, *id.* § 843(b). He was sentenced principally to a 144-month term of imprisonment. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review the District Court's legal conclusions *de novo* and findings of fact for clear error. *See Scanio v. United States*, 37 F.3d 858, 859–60 (2d Cir. 1994).

Canfield's appeal focuses largely—though not entirely—on the claim that his counsel failed to object at trial, after trial, and on appeal to testimony of a confidential informant ("CI") that the Government allegedly should have known to be false. On May 10, 2012, the CI was arrested with methylone. Two Drug Enforcement Agency investigation reports recounted that the CI stated that she received the methylone from her boyfriend rather than from Canfield. At trial, the CI denied making that statement. The Government did not correct the CI's testimony, and Canfield's counsel did not object or raise this omission—which Canfield argues would have entitled him to a new trial under *Napue v. Illinois*, 360 U.S. 264 (1959)[1]—in the post-trial motion or in the direct appeal.

We reject Canfield's argument that "there is a reasonable probability that, but for [his] counsel's [failure to raise a *Napue* challenge], the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). We assume without deciding that the Government and Canfield's counsel should have known that the CI's uncorrected testimony was false. Nonetheless, Canfield's counsel could not have established "any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Cromitie*, 727 F.3d 194, 221 (2d Cir. 2013) (citation omitted). The disputed testimony standing alone was not critical to establish an element of any offense. The Government introduced other evidence of the conspiracy and its connection to the Northern District of New York. *See United States v. Canfield*, 758 F. App'x 51, 56 (2d Cir. 2018) (summary order) ("[The CI] was in the NDNY when she exchanged the texts with Canfield, and Canfield knew that she lived in the Albany area, which is in the NDNY."). And correcting the disputed testimony would not have meaningfully affected the jury's view of the CI's

---

[1] "[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment . . . when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue*, 360 U.S. at 269.

credibility, which was already in severe doubt. Notably, the Government advised the jury that it would be unreasonable to trust the CI without looking at all the other evidence. This other evidence—including numerous text and Facebook messages and a video recording of Canfield selling methylone to an undercover agent—was ample. Accordingly, we reject Canfield's argument that he was prejudiced by his trial counsel's failure to raise a *Napue* challenge.

We reject for the same reasons Canfield's argument that he was prejudiced by the failure of his counsel on appeal to raise a *Napue* challenge. *See Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) ("To establish prejudice . . . , a petitioner must show that, had his claim been raised on appeal, there is a reasonable probability that it would have succeeded.").

Nor was Canfield prejudiced by his counsel's failure to file post-trial motions. Aside from obliquely referring to the *Napue* issue, Canfield does not identify any motions that reasonably may have caused "the result of the proceeding [to be] different." *Strickland*, 466 U.S. at 694. As for the arguments raised on direct appeal, we assumed that they had been preserved, so Canfield was not prejudiced by a more onerous standard of review. *See Canfield*, 758 F. App'x at 54 n.1.

Finally, we reject Canfield's argument that the District Court inadequately inquired into a possible conflict of interest of Canfield's counsel. *See United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994) (discussing the obligation to inquire into a possible conflict). "As the only basis asserted by [Canfield] for his claim that his attorneys had a conflict of interest is that he and they disagreed as to tactics"—specifically, whether to file post-trial motions—"he has not shown an actual conflict of interest[,] [or] called to our attention any basis for finding that his attorneys had a potential conflict of interest." *United States v. Jones*, 482 F.3d 60, 75 (2d Cir. 2006). The District Court was not "sufficiently apprised" of a possible conflict, and was not obliged to further inquire. *See Levy*, 25 F.3d at 153.

We have reviewed all of the arguments raised by Canfield on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the September 14, 2020 order of the District Court.[2]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[2] Canfield earlier this month moved to withdraw his appeal without prejudice. Canfield explained that, if this Court were to grant his requested relief, he may be transferred to a facility in the Northern District of New York. A transfer would have interfered with Canfield's graduation from his current facility's Residential Drug Abuse Program ("RDAP"), completion of which would result in a sentence reduction. Canfield thus urged this Court to consider his appeal after April 18, 2022, the date of his scheduled RDAP graduation.

We denied Canfield's motion and ordered that our mandate would not issue until after April 18, 2022. Because we affirm the District Court's order, Canfield's RDAP-related concern is no longer salient. But even if we had resolved this appeal in Canfield's favor, our order regarding the mandate would have allowed him the time to graduate from his RDAP course. The mandate is our Court's technique for returning jurisdiction to the forum from which a dispute came to us (here, the District Court). *See Ostrer v. United States*, 584 F.2d 594, 598 (2d Cir. 1978). Unless we issue a contrary order or a party moves for rehearing or for a stay, *see* Fed. R. App. P. 40 & 41, the mandate usually issues 21 days after we decide an appeal, *see Ostrer*, 584 F.2d at 598. Our decision does not take effect until the mandate issues. *See United States v. Simmons*, 923 F.2d 934, 956 (2d Cir. 1991). Canfield thus would not have been compelled to change facilities until after our mandate had issued—not the date his case was submitted or decided.