**Colin MAPP, Petitioner–Appellee,**

v.

**Janet RENO, as Attorney General of the United States; Doris Meissner, as Commissioner of the Immigration and Naturalization Service; Edward McElroy, as New York District Director of the Immigration and Naturalization Service; Lynne Underdown, New Orleans District Director of the Immigration and Naturalization Service; Immigration and Naturalization Service, Respondents–Appellants.**

Docket No. 99–2735.

United States Court of Appeals, Second Circuit.

Argued Sept. 6, 2000.

Decided Feb. 23, 2001.

Michael P. DiRaimondo, DiRaimondo & Masi, LLP, New York, NY.

Scott Dunn, Assistant United States Attorney, for Loretta E. Lynch, United States Attorney for the Eastern District of New York (Deborah B. Zwany, Varuni Nelson, Assistant United States Attorneys,

Patrick Shen, Special Assistant United States Attorney, on the brief).

Before MESKILL, CALABRESI, and SOTOMAYOR, Circuit Judges.

CALABRESI, Circuit Judge:

In this case, we are called upon to determine whether the federal courts have inherent authority to grant bail to habeas petitioners who are being detained by the Immigration and Naturalization Service. The INS argues that the "plenary power" enjoyed by Congress and the executive branch over immigration requires the utmost deference to the Attorney General's decisions with respect to detention of aliens. Consequently, while the federal courts have inherent power to release on bail a habeas petitioner who challenges his detention after a criminal conviction, in the government's view, judicial power to do the same with respect to habeas petitioners challenging detention by the INS is sharply constrained.

We hold that the federal courts have the same inherent authority to admit habeas petitioners to bail in the immigration context as they do in criminal habeas cases. We note that this authority may well be subject to appropriate limits imposed by Congress. But, because we find that Congress has not, to date, curtailed this feature of federal judicial power, we affirm the judgment of the district court that it was empowered to consider petitioner's request for bail. Nevertheless, we vacate the district court's decision to release this particular petitioner because that court did not consider all of the standards that must be met with respect to bail determinations during habeas proceedings.

## I

Petitioner Colin Mapp is a native of Trinidad and Tobago. He entered the United States as a lawful permanent resi-

dent in 1970 at the age of eight. On April 8, 1987, Mapp was convicted in the Supreme Court of New York (Queens County) of criminal possession of stolen property in the first degree, a class D felony under New York law. On July 7, 1988, Mapp was convicted of attempted possession of stolen property in the third degree, a class E felony under New York law. Both convictions were pursuant to guilty pleas.

On March 4, 1997, almost nine years after Mapp's second conviction, the INS issued an Order to Show Cause; it claimed that Mapp, as an alien convicted of two crimes involving moral turpitude, *see* former 8 U.S.C. § 1251(a)(2)(A)(ii), was deportable under § 241(a)(2)(A)(ii) of the Immigration and Nationality Act.[1] Mapp conceded that he was subject to deportation under this statute, but contended that he was eligible for a waiver pursuant to INA § 212(c) (a "§ 212(c) waiver"). Under this provision, resident aliens who have accrued seven years of lawful permanent residence in the United States may apply for (but are not guaranteed) a waiver of deportation. *See* 8 U.S.C. § 1182(c) (1994) (repealed by Illegal Immigration Reform and Immigrant Responsibility Act, ("IIRIRA"), § 304(b), Pub. L. No. 104–208, 110 Stat. at 3009–597 (1996)).

On October 21, 1997, an Immigration Judge deemed Mapp to be statutorily ineligible for § 212(c) relief and ordered him deported to Trinidad. The Board of Immigration Appeals ("BIA") affirmed. The BIA explained that, in its view, Mapp was ineligible for a § 212(c) waiver due to the enactment of § 440(d) of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). That provision states that "[§ 212(c)] shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in [INA] section 241(a)(2)(A)(iii), (B), (C), or (D), or

---

1. Since the initiation of Mapp's deportation proceedings, he has been convicted yet again for receiving stolen goods. Because he was found deportable on the basis of his two earlier convictions, however, his most recent conviction is not relevant to the matter before us.

any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i)." Antiterrorism and Effective Death Penalty Act, § 440(d), Pub. L. No. 104–132, 110 Stat. 1214, 1277 (1996). Both of Mapp's offenses fell into this excluded category.

The BIA conceded that, under this court's precedents, *see Henderson v. INS*, 157 F.3d 106, 130 (2d Cir.1998), *cert. denied Reno v. Navas*, 526 U.S. 1004, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999), these restrictions on § 212(c) waivers do not apply to deportation proceedings commenced before the AEDPA's effective date. Because the proceeding against Mapp was started after that date, however, the BIA determined that § 440(d) was applicable to him, and, as a result, deemed him ineligible for a § 212(c) waiver.

Mapp filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York challenging this interpretation of § 440(d) of the AEDPA. Mapp contended that because he committed the crimes that rendered him deportable before the effective date of that statute, application of § 440(d) to him would have a retroactive effect "contrary to the intent of Congress." He asked that the district court deem him eligible for a § 212(c) waiver and direct the INS to conduct a hearing on the merits of his waiver claim.

While his habeas proceeding was before the district court, Mapp requested that the INS release him from custody on bond pending disposition of his petition. The INS denied this request, stating first that, because "a final order of removal [has

been issued], he is not eligible for a bond," and second, that "Mr. Mapp would not be eligible for a bond, even if he did not have a final order of removal, pursuant to Title 8, USC, Section 1226(c)," which provides for mandatory detention of criminal aliens such as Mapp.

■ Having been deemed ineligible for bail by the INS, Mapp sought relief from the district court, which held initially that "[f]ederal case law is clear that release on bail may be ordered pending disposition of a petition for habeas corpus," and then proceeded to assess whether Mapp was fit for bail. The court explained that Mapp had a substantial likelihood of success on the merits of his habeas petition,[2] and that his situation was "extraordinary when compared to typical habeas proceedings." Finally, the district court found that Mapp was neither a serious flight risk, nor a threat to the community. As a result, the court ordered Mapp released from custody on bond.

This appeal followed.

## II

### A. *Inherent Authority to Grant Bail*

■ We review *de novo* the district court's conclusion that the federal courts have inherent authority to release habeas petitioners on bail. *See generally United States v. Rexach*, 896 F.2d 710, 713 (2d Cir.1990) ("Whether the district court applied correct principles of law is a matter of law that we may view *de novo.*").

The question of whether the federal courts have inherent power to grant bail in any case where they may properly assert

---

**2.** The district court's finding that Mapp was likely to succeed on the merits of his habeas petition was predicated on two cases from the Eastern District of New York, *Maria v. McElroy,* 68 F.Supp.2d 206 (E.D.N.Y.1999), and *Pottinger v. Reno,* 51 F.Supp.2d 349 (E.D.N.Y. 1999). In both cases, the district court found that AEDPA § 440(d) could not be applied to individuals who had committed the crimes underlying their deportation order before the

effective date of the AEDPA. Later, on July 13, 2000, and on this basis, Chief Judge Sifton granted Mapp's habeas petition, thereby ordering a § 212(c) hearing. *See infra* Part III.

We note, however, that the district court's grant of habeas relief does not render the issue before us moot. For the question remains as to whether Mapp is obliged to remain in custody while the § 212(c) hearing is pending.

jurisdiction (whether it be criminal or involving alien deportation) is by no means a novel one. In fact, it has divided the federal courts for over a century. As one federal court explained:

On the question of inherent power to grant bail in such cases, the courts have divided themselves into two groups. The following cases support the contention that the power to admit to bail is incident to the power to hear and determine the case: *United States v. Evans*, 2 F. 147 (C.C.W.D.Tenn.1880); *In re Gannon*, 27 F.2d 362 (E.D.Pa.1928); *In re Chow Goo Pooi*, 25 F. 77 (C.C.D.Cal. 1884); *In re Ah Kee*, 22 F. 519 (S.D.N.Y. 1884); *In re Ah Tai*, 125 F. 795 (D.Mass.1904); *In re Chin Wah*, 182 F. 256 (D.Or.1910); *United States v. Yee Yet*, 192 F. 577 (D.N.J.1911); *Whitfield v. Hanges*, 222 F. 745 (8th Cir.1915); *Ewing v. United States*, 240 F. 241 (6th Cir.1917). The following cases support the view that there is no such inherent power in the federal courts and that they cannot admit a person to bail unless such power is expressly conferred by statute: *In re Carrier*, 57 F. 578 (D.Colo.1893); *Case of Chinese Wife*, 21 F. 808 (C.C.D.Cal.1884); *Chin Wah v. Colwell*, 187 F. 592 (9th Cir.1911); *United States v. Curran*, 297 F. 946, 36 A.L.R. 877 (2d Cir.1924); *United States v. Pizzarusso*, 28 F.Supp. 158 (D.Conn. 1939); *In re Hanoff*, 39 F.Supp. 169 (N.D.Cal.1941); *Ex parte Perkov*, 45 F.Supp. 864 (S.D.Cal.1942); *United States v. Longo*, 46 F.Supp. 169 (D.Conn.1942); *Bongiovanni v. Ward*, 50 F.Supp. 3 (D.Mass.1943).

*Principe v. Ault*, 62 F.Supp. 279, 281 (D.Ohio 1945). In addressing this question, therefore, we are not required to break new ground so much as to revisit a place where we have been before and to take stock of how the landscape has changed over the years.

This court first addressed the question of inherent power in *United States ex rel. Carapa v. Curran*, 297 F. 946 (2d Cir. 1924). In that case, we stated that the passage of a federal statute was required for the federal courts to exercise the power to grant bail. *See id.* at 952 ("The power to admit to bail is not a mere matter of practice. In the United States, the right to bail is thought to be dependent on statutes."). We acknowledged that traditionally, common law courts were permitted to admit to bail individuals properly within their jurisdiction, *see id.*, 297 F. at 954 (citing *Queen v. Spilsbury*, 2 Q.B.Div. 615 (1898)), but we emphasized that "the Circuit Courts of Appeals and the District Courts of the United States are not possessed of the jurisdiction of courts of the common law." *Id.* Unlike common law courts, we noted, the federal courts "have such jurisdiction only as is conferred on them by acts of Congress."[3] *Id.* We concluded that "the power to admit to bail *is not a power inherent in the court,*" *id.* at 955 (emphasis added), and that "neither this court nor the District Court has authority to admit to bail, Congress having conferred no power to admit to bail in such a deportation proceeding as the one now pending in this court."[4] *Id.* at 959.

---

**3.** Congress had, at that time, expressly authorized the federal courts to admit habeas petitioners to bail in the criminal context, but had not done so with respect to deportation proceedings. *See Carapa*, 297 F. at 953.

**4.** In reaching this conclusion, the panel acknowledged that in *Wright v. Henkel*, 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948 (1903), the Supreme Court declared itself "unwilling to hold that the circuit courts possess no power in respect of admitting to bail other than as specifically vested by statute." *Id.* at 63, 23 S.Ct. 781. The *Carapa* court, however, like others, *see, e.g., Johnston v. Marsh*, 227 F.2d 528, 531 (3rd Cir.1955), classified this fragment of the *Wright* holding as dicta and proceeded as if unfettered by the Supreme Court's language. *See Carapa*, 297 F. at 953.

Nevertheless, *Wright* is relied upon by at least one contemporary authority for the sweeping proposition that "[a] court has inherent authority to admit a person to bail in a case properly within the court's jurisdiction." *See* 3A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure 2d*, § 768.

*Carapa*'s unequivocal pronouncement, however, was not our last with respect to this issue. In *United States ex rel. Paetau v. Watkins,* 164 F.2d 457, 460 (2d Cir. 1947), we qualified the *Carapa* holding by explaining that "[t]he actual decision [in that case] involved only the power of the appellate court on review, although some of the language of the opinion went further." And, more recent cases from this circuit have gone beyond *Paetau* and have indicated that an express statutory grant of authority is, in fact, *not* necessary for federal district courts to grant bail in habeas cases. Thus, in *Ostrer v. United States,* 584 F.2d 594, 596 n. 1 (2d Cir.1978), we stated that "[a] district court has inherent power to enter an order affecting the custody of a habeas petitioner who is properly before it contesting the legality of his custody." *See also Argro v. United States,* 505 F.2d 1374, 1377–78 (2d Cir.1974).

As early as the 1960s, other circuits embraced this view as well, *see, e.g., Baker v. Sard,* 420 F.2d 1342, 1343 (D.C.Cir.1969) (*per curiam* ) ("[r]elease is available in a habeas corpus action"); *Boyer v. City of Orlando,* 402 F.2d 966, 968 (5th Cir.1968) (ordering the release of a habeas petitioner on bail pending exhaustion of state and federal remedies); *Johnston,* 227 F.2d at 531 ("[o]ne of the inherent powers of the judiciary with regard to proceedings before it has been the admission of a prisoner to bail where, in the exercise of his discretion, the judge deems it advisable.").

■ This position has, moreover, been reflected in the decisions of our court and the district courts in this circuit many times in more recent years. *See, e.g., Grune v. Coughlin,* 913 F.2d 41, 43–44 (2d Cir.1990); *Iuteri v. Nardoza,* 662 F.2d 159, 161 (2d Cir.1981); *Starzecpyzel v. Reno,* No. 97 Civ. 1349, 1997 WL 289568, at *1 (S.D.N.Y.1997); *Harris v. United States,* No. 97 Civ.1904, 1997 WL 272398, at *1 (S.D.N.Y.1997). Today we reaffirm these cases and hold, once again, that the federal courts have inherent authority to admit to bail individuals properly within their jurisdiction.

■ Even as we have acknowledged the authority of the federal courts to grant bail to habeas petitioners, however, we have also, and consistently, emphasized that this power is a limited one, to be exercised in special cases only. As we noted in *Ostrer,* "a habeas petitioner should be granted bail only in unusual cases, or when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *Ostrer,* 584 F.2d at 596 n. 1 (internal quotation marks and citation omitted). And, in *Grune,* we explained that "[t]he standard for bail pending habeas litigation is a difficult one to meet: The petitioner must demonstrate that the habeas petition raise[s] substantial claims and that extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective."[5] *Grune,* 913 F.2d at 44 (internal quotation marks omitted) (alterations in original).

Not satisfied by the requirement that extraordinary circumstances must exist before bail can be issued by federal courts in habeas cases, the government urges

---

5. Other circuit courts that have upheld the inherent authority of the federal district courts to admit habeas petitioners to bail have likewise stressed the constraints on this facet of judicial power. *See, e.g., Sard,* 420 F.2d at 1343 ("[T]he release request ordinarily must be measured against a heightened standard requiring a showing of exceptional circumstances."); *Reiff v. United States,* 288 F.2d 887, 888 (9th Cir.1961) (per curiam) ("Except in some exceptional circumstance . . . , a person convicted of crime who seeks release by way of a section 2255 or habeas corpus proceeding is not entitled to bail pending appeal from an order denying such an application.") (internal citation omitted); *see also Tam v. INS,* 14 F.Supp.2d 1184, 1190 (E.D.Cal.1998) ("Bail is appropriate pending a decision in a habeas case only when the petitioner has raised substantial constitutional claims upon which he has a high probability of success, and also when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective.") (internal quotation marks omitted).

that in cases challenging INS detention (rather than incarceration as a result of a criminal conviction), the power of the federal courts is even more limited. In the government's view, Congress's "plenary power" over immigration matters cannot coexist with the federal courts' exercise of such "inherent authority" to release habeas petitioners.[6] Because the recent cases recognizing the courts' inherent power to grant bail involved "criminal" habeas proceedings rather than requests for habeas relief in a "civil" context, the government contends that they are inapposite.[7]

There can be no doubt that, with respect to immigration and deportation, federal judicial power is singularly constrained. *See* U.S. Const. art. I, § 8, cl. 4; *see also, e.g., Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) ("This Court has repeatedly emphasized that over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens. Our cases have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.") (internal quotation marks and citations omitted). The "political departments'" plenary power in this realm, however, is neither self-defining nor self-executing; and the fact that, under the Constitution, Congress and the executive branch *may* exercise uniquely broad authority over immigration matters does not mean that these bodies need not act at all in order to animate and define the contours of this power.

While it may be that, in some cases, detention without bail is a necessary feature of our deportation procedures, *see, e.g., Wong Wing v. United States,* 163 U.S. 228, 235, 16 S.Ct. 977, 41 L.Ed. 140 (1896) ("[p]roceedings to exclude or expel would be vain if those accused could not be held in custody pending the inquiry into their true character, and while arrangements were being made for their deportation"), the burden lies on the political branches explicitly to instantiate such a system of detention, and to do so through the law. Absent a clear direction from Congress, federal judicial power is unaltered, and the authority of the federal courts to admit to bail parties properly within their jurisdiction remains unqualified.[8] We must,

6. The government does not contend that the federal courts are *totally* powerless to release on bail individuals who have been detained by the INS. It would, instead, have the federal courts apply the deferential standard of review articulated in *Carlson v. Landon,* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952), when a habeas petitioner seeks judicial review of a denial of bail by the INS. In *Carlson,* the Supreme Court explained that it was "Congress' intention to make the Attorney General's exercise of discretion [with respect to the detention of aliens] presumptively correct and unassailable except for abuse. We think the discretion reposed in the Attorney General ... can only be overridden where it is clearly shown that it was without a reasonable foundation." *Id.* at 540–41, 72 S.Ct. 525 (internal quotation marks and citation omitted).

Relying on this and other similar authority, *see, e.g., Doherty v. Thornburgh,* 943 F.2d 204, 211 (2d Cir.1991), (limiting its inquiry to whether there was "invidious purpose or bad faith motivating the [Attorney General's] denial of bail"), the government maintains that "the Attorney General has the exclusive authority over the detention of aliens and the power of the judiciary to intervene ... is extremely limited." This limited power of intervention, the government concludes, is inconsistent with the standard of review developed for bail determination in the "criminal" habeas cases discussed above.

As we demonstrate below, however, *see infra* nn. 8, 11, *Carlson* and *Doherty* can readily be distinguished.

7. Of course, all habeas corpus actions are civil in nature. *See, e.g., Fisher v. Baker,* 203 U.S. 174, 181, 27 S.Ct. 135, 51 L.Ed. 142 (1906). The distinction drawn here by appellant, between "criminal" and "civil" habeas must, therefore, mean to distinguish between the different kinds of proceedings that triggered a habeas petitioner's incarceration from which relief is sought—a criminal trial in the former case, and a civil deportation hearing in the latter.

8. The government's reliance on *Doherty, supra* note 6, is misplaced. In that case, we affirmed the district court's denial of habeas

therefore, turn our attention to the question of whether Congress has expressly narrowed or abolished the judicial power to grant bail to habeas petitioners in Mapp's circumstances.

## B. Direction from Congress

Initially, the INS had contended that Congress had, in fact, expressly limited federal judicial (and, indeed, even executive) power to grant bail to aliens in Mapp's position. In its letter responding to Mapp's request for release, the INS had explained that "pursuant to Title 8, USC, Section 1226(c), the Service has no choice but to detain [you] and is precluded from releasing [you]."

8 U.S.C. § 1226(c) provides, in pertinent part:

> The Attorney General *shall* take into custody any alien who ... is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title.... The Attorney General may release [such] an alien ... only if the Attorney General decides ... that release of the alien from custody is necessary to [the Witness Protection Program] and the alien satisfies the Attorney General that

the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.

8 U.S.C. § 1226(c)(1), (2) (emphasis added). The INS's letter to Mapp had expressed the view that this statute stripped the executive branch of authority to release him.[9] Moreover, because 8 U.S.C. § 1226(e) indicates that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review," §§ 1226(c) and 1226(e), taken together, had appeared to render Mapp's detention mandatory.

The INS, however, has since abandoned the view that §§ 1226(c) and 1226(e) apply to Mapp. In its brief, the INS explains that it has "reinterpreted the scope of Section 1226(c) and concluded that its applicability is limited to the pendency of administrative proceedings." In other words, the INS now concedes that, because Mapp's administrative proceedings are final, the conditions of his detention are governed by 8 U.S.C. § 1231 and "[he] is no longer subject to 'mandatory detention.' "[10] Put more broadly, the government has retreated from its contention that any particular statute precludes the federal courts' exercise of their inherent authority to release

---

relief to an INS detainee who sought release after eight years of detention. In assessing whether the petitioner in that case should be released on bail, we considered only whether the INS had acted with "invidious purpose or bad faith," *Doherty*, 943 F.2d at 211; we did so, however, in the face of a statute expressly limiting the scope of our inquiry to whether "the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances." *Id.* at 210, *quoting* former 8 U.S.C. § 1252(c). *Doherty* thereby reinforces the notion that, while Congress may create significant distinctions between INS detainees and other habeas petitioners, legislative action is necessary to define these differences.

9. That Mapp was not eligible for the Witness Protection Program is not, and has never been, in dispute.

10. As noted above, *see supra* n. 2, Chief Judge Sifton granted Mapp's habeas petition and ruled that the INS was required to hold a

hearing to determine his eligibility for a § 212(c) waiver. The government has, subsequently, expressed the view that "as a criminal alien in deportation proceedings, who does not have a final administrative order, petitioner's detention is mandated by 8 U.S.C. § 1226(c)." *See* Letter of September 1, 2000. That is, the government contends that the grant of Mapp's habeas petition has had the paradoxical, but not impossible, effect of shifting his status from that of a discretionary detainee to that of a mandatory detainee.

But the question of whether petitioner is subject to mandatory detention under 8 U.S.C. § 1226 is not properly before us. The government's letter, in substance, asks this court to rule prospectively that, if the INS were to detain Mapp now, its action would be appropriate under 8 U.S.C. § 1226. Unless and until the INS acts to detain Mapp on these grounds, however, we have no occasion to express any view on the matter.

on bail habeas petitioners situated like Mapp. It now relies exclusively, instead, on the more general notion that the exercise of such power by the judiciary is inconsistent with the political branches' plenary control over immigration matters.

The government attempts to buttress this claim by highlighting the myriad ways in which Congress has, in recent years, contracted the scope of judicial review with respect to immigration custody matters. *See, e.g.,* 8 U.S.C. §§ 1226(e), 1252(a)(2)(B)(ii), 1252(g) (1998). These statutes erect a cavalcade of jurisdictional bars to federal court review of INS detention decisions.[11] In the government's view, these laws provide further evidence of a critical distinction between habeas proceedings arising out of criminal as opposed to civil contexts—a distinction that, it suggests, manifests itself, *inter alia,* in the absence of authority in the district courts

to grant bail to petitioners in the latter set of cases on the same terms as in the former.

But, for the reasons stated earlier, we are unprepared to hold that powers that are inherent in the federal courts, like that of granting bail to habeas petitioners, can be limited by general attitudes cobbled together from laws of varying vintage and scope, rather than by specific statutory provisions. As a result, while the government's discussion of recent statutory inroads on judicial review of INS decisions provides evidence of the breadth of congressional power in this arena, it is of little help with respect to the particular question before us.

■■ We conclude, therefore, that the district court acted within its power when it considered whether petitioner was entitled to release on bail.[12]

---

11. *See also* Gerald L. Neuman, *Habeas Corpus, Executive Detention, and the Removal of Aliens,* 98 Colum. L. Rev. 961, 963–969 (1998) (describing "the extraordinary retrenchment of judicial review begun by AEDPA and expanded by IIRIRA").

12. In reaching this conclusion, we reject the government's contention that all requests for bail by alien habeas petitioners must be reviewed under the deferential standard articulated in *Carlson.* In *Carlson,* the Attorney General had acted pursuant to a specific grant of authority in Section 23 of the Internal Security Act of 1950. That statute provided that "[p]ending final determination of the deportability of any alien taken into custody under warrant of the Attorney General, such alien may, in the discretion of the Attorney General ... be continued in custody...." *See Carlson,* 342 U.S. at 528 n. 5, 72 S.Ct. 525 (*quoting* former 8 U.S.C. § 156). And, "[t]he respondent [in *Carlson*] was held without bail by [the INS] under an order from the Acting Commissioner of Immigration." *Id.* at 531, 72 S.Ct. 525. So, while Congress had given the Attorney General discretion to release aliens such as the respondent in *Carlson,* the INS had, instead, expressly decided that release was not appropriate.

With respect to Mapp's detention, there has been a similar grant of discretion to the Attorney General, *see* 8 U.S.C. § 1231(a)(6), but the government has conceded that no such discretion was ever exercised. To the con-

trary, Mapp remained in custody because the INS mistakenly believed continued detention was mandatory. *See,* INS Letter of October 4, 1999 ("pursuant to Title 8 USC, Section 1226(c), the Service has no choice but to detain [you.]"). And, while it may be the case that had the INS exercised its discretion under § 1231(a)(6) and decided not release Mapp on bail, we would be required to defer to its decision, where there has been no such consideration of a detainee's fitness for release, deference to the INS under the terms articulated in *Carlson* is not warranted. *Cf. United States v. Rahman,* 189 F.3d 88, 157–58 (2d Cir.1999) (*per curiam*) (noting that, while a district judge's exercise of discretion in denying a criminal defendant a downward departure under the Sentencing Guidelines is subject to great deference, where the district court has failed to exercise such discretion because it mistakenly believed that it lacked authority to do so, no such deference is required).

We note, moreover, that an alien (such as the respondent in Carlson) whose habeas petition challenges only a denial of bail by the INS is in a fundamentally different position from an alien (such as Mapp) who seeks bail during a challenge to the INS's decision to deport. The alien in *Carlson* was undoubtedly to be deported, while Mapp may be able to remain in this country if he is eventually granted a § 212(c) waiver. In Mapp's case, therefore, a district court's conclusion that the petitioner is likely to succeed on the mer-

## III

As mentioned above, our cases hold that a court considering a habeas petitioner's fitness for bail must inquire into whether "the habeas petition raise[s] substantial claims and [whether] extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective." *Iuteri*, 662 F.2d at 161; *see also Grune*, 913 F.2d at 44. The district court found that Mapp had "a substantial claim for relief" on the merits of his petition. This conclusion was predicated on the holdings in *Maria v. McElroy*, 68 F.Supp.2d 206 (E.D.N.Y.1999), and *Pottinger v. Reno*, 51 F.Supp.2d 349 (E.D.N.Y.1999), that § 440(d) of the AEDPA could not be applied to aliens whose convictions preceded the effective date of that statute.[13] Judge Sifton then asserted that "[p]etitioner's situation is extraordinary when compared to 'typical habeas corpus proceedings'" because "[i]n most habeas petitions challenging criminal con-

victions, the presumption of innocence is no longer available.... Here, however, Mapp challenges a deportation order, the propriety of which is clearly open to question."

Assuming, as we now must, *see St. Cyr* 229 F.3d at 418, that the district court was correct with respect to the existence of a substantial claim for relief, and *arguendo*, that the circumstances of Mapp's habeas petition were, in some respect, "extraordinary," the grant of bail in this case must nevertheless be vacated. This is because the district court neglected to articulate why its grant of bail was "necessary to make the habeas remedy effective" in this case. *Ostrer*, 584 F.2d at 596 n. 1

The relief sought by petitioner guaranteed neither his release from detention nor a vacatur of the INS's order of removal. The most Mapp could (and, as it turns out, did) secure by virtue of being granted habeas was an order from the district

---

its of his petition, establishes grounds for skepticism not only with respect to the INS's order of removal but also, and necessarily, as to the appropriateness of petitioner's incarceration.

**13.** The district courts held that (1) the language and structure of the AEDPA indicate that Congress did not intend § 440(d) to be applied to criminal activity committed by aliens before the effective date of the AEDPA, *see Maria*, 68 F.Supp.2d at 226–28; *Pottinger*, 51 F.Supp.2d at 359–61 (identifying provisions in the AEDPA that expressly provide for retroactive application and inferring from the absence of such express language with respect to § 440(d) that Congress did not intend that section to apply retroactively), and (2) even if the language and structure of the statute were deemed to be ambiguous, a strong presumption against retroactivity militates against applying AEDPA § 440(d) in such cases, *see Maria*, 68 F.Supp.2d at 228–30; *Pottinger*, 51 F.Supp.2d at 361–63 (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), for the proposition that a presumption against giving a statute retroactive effect exists, and finding that application of § 440(d) of the AEDPA to crimes committed before the statute's effective date would entail a retroactive effect insofar as it would attach "new legal consequence[s]" to these actions).

Subsequently, in September 2000, this court, in *dicta*, expressly cast doubt on the theory that the elimination of the § 212(c) waiver could not be applied retroactively to pre-AEDPA criminal *conduct*. *See St. Cyr v. INS*, 229 F.3d 406, 418 (2d Cir.2000) *cert. granted*, — U.S. —, 121 S.Ct. 848, 148 L.Ed.2d 733 (January 12, 2001). We note, however, that the *St. Cyr* opinion held that AEDPA would have an impermissible retroactive effect on petitioners, like Mapp, who *pled guilty* prior to the enactment of that statute. *Id.*

Judge Sifton relied on the arguments made in *Maria* and *Pottinger* when, subsequent to granting bail, he, on July 13, 2000, granted Mapp's petition for habeas relief. The district court highlighted the "new legal consequences" that would attach to Mapp's conduct if § 440(d) were applied to him by saying that "[s]urveys of the INS's past behavior demonstrate that, between 1989 and 1994, over one-half of those applying for § 212(c) discretionary relief received it."

Because we conclude that the district court's decision to grant bail must be vacated on other grounds, we decline to address the complicated question of whether Mapp does, in fact, have a substantial likelihood (on appeal) of succeeding on the merits of his retroactivity argument.

court requiring that the INS consider his eligibility for a waiver of deportation under INA § 212(c). But, and significantly, the effectiveness of this form of relief is wholly independent of the question of whether Mapp is incarcerated while the § 212(c) hearing is pending. Without findings that indicate why Mapp's release is needed to make the required § 212(c) hearing "effective," findings that are by no means obvious, we cannot say that a case for bail has been made out.[14]

## CONCLUSION

We affirm the district court's determination that the federal courts have the same inherent authority to admit to bail habeas petitioners who challenge INS detention pending disposition of the merits of their petitions as they do to release "criminal" habeas petitioners. We also acknowledge that, in cases involving challenges to INS detention, Congress's plenary power over immigration matters renders this authority readily subject to congressional limitation. In the absence of express statutory constraints, however, the mere fact that such plenary control exists is inadequate to effectuate any curtailment of the federal judiciary's power to grant bail to those who are properly before it. And, we cannot identify any existing statute that expressly limits the inherent authority of the federal courts in respect to the bail application before us. Still, because the district court's decision to grant to petitioner a writ of habeas corpus entitles him only to a hearing on his request for a waiver of deportation under INA § 212(c), rather than outright release or withdrawal of the order of removal against him, and because the district court has made no finding demonstrating that release is necessary to the effectiveness of that hearing (*i.e.*, to

**14.** Because we vacate the district court's grant of bail to petitioner on the ground that it failed to explain how release was necessary to the effectiveness of Mapp's habeas remedy, we find it unnecessary to review the district court's conclusions that Mapp presented no threat to the community and that his release would not run contrary to the public interest. *See* Order of the District Court (October 5, 1999).

Similarly, we have no occasion to consider whether Mapp is entitled to outright release (without regard to the established standard for release of habeas petitioners on bail) on the ground that the INS, having failed to make a discretionary judgment under § 1231 and having conceded that its decision could not properly have rested on 8 U.S.C. § 1226, lacks any statutory basis whatever for holding Mapp. Mapp has explicitly requested only that he be released "during the pendency of habeas corpus proceedings" and in order effectively to pursue those proceedings. He has not argued that, given the procedures employed (and those not employed) by the INS, he falls entirely outside of its authority to detain him. Accordingly, we express no view as to whether Mapp would be entitled to outright release irrespective of the standards that generally apply to the grant of bail to habeas petitioners.

Finally, we also need not take up at this time the government's request that the case be "remanded to the district court with instructions that it remand this matter to the Attorney General to determine petitioner's eligibility for release from detention pursuant to 8 U.S.C. § 1231." Our action here is simply to say that the district court must consider whether and how the grant of bail in this case is necessary to make effective the habeas remedy Mapp sought. If, on remand, the district court applies the proper standard and concludes that Mapp is entitled to bail, it will be for that court to decide, as an initial matter, whether to remand to the INS for it to exercise its discretion under §. 1231, assuming the INS has not already so acted in the interim. There is, therefore, no reason for us to decide, as the Third Circuit did in *In re Ghalamsiah*, 806 F.2d 68 (3d Cir.1986), the difficult question of whether, when the INS fails to exercise its discretion in detaining an alien, it is necessary for a federal court to remand the case to the INS before it may release the alien, so that the INS might, if it is so inclined, find a reason to continue the detention.

While this matter is before the district court on remand, the INS may seek to reestablish 8 U.S.C. § 1226 as the basis for Mapp's detention, or it may make a discretionary bail determination under 8 U.S.C. § 1231. If, instead, the INS chooses to do neither of these two things, and the district court deems Mapp eligible for bail under the standard we have clarified today, then, and only then, will it become necessary to decide whether remand to the INS is appropriate. Accordingly, we express no view on that question at this time.

the habeas relief petitioner sought) the grant of bail is VACATED and the case is REMANDED to the district court for proceedings consistent with this opinion.

