Cesar Ivan OSSES, Petitioner,

v.

Edward J. MCELROY, New York Director, Immigration and Naturalization Service, et al., Respondents.

No. 02–CV–6576L.

United States District Court,
W.D. New York.

Sept. 4, 2003.

Cesar Ivan Osses, A31343100, Lords Valley, PA, for Petitioner.

Gail Y. Mitchell, U.S. Attorney's Office, Buffalo, NY, for Defendant.

## DECISION AND ORDER

LARIMER, District Judge.

Petitioner Cesar Ivan Osses filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Osses, a citizen of Columbia who currently is in the custody of the United States Department of Homeland Security,[1] seeks relief from a final

---

1. On March 1, 2003, the United States Immigration and Naturalization Service ("INS") was abolished and its functions transferred to the Department of Homeland Security. *See*

order of removal, dated November 15, 2001. His appeal from that order was dismissed by the Board of Immigration Appeals on February 27, 2002. Osses filed the instant habeas petition on September 4, 2002.[2] In addition to the petition,[3] pending before the Court is Osses's "Emergency Bail/Bond Motion." Docket No. 12.

## FACTUAL BACKGROUND

The relevant facts are undisputed. Osses was convicted on October 17, 1997 in New York Supreme Court, Queens County, of Grand Larceny in the Fourth Degree, in violation of N.Y. Penal L. § 155.30(4). Administrative Record ("AR.") 186–87. Osses initially was sentenced to time served and five years probation. AR. 186. Osses violated probation when he was convicted of another crime and his probation was revoked on March 23, 2001, and he was re-sentenced to a term of one to three years incarceration. AR. 187. On April 24, 1998, Osses was convicted in New York City Criminal Court of Attempted Petit Larceny, in vio-

lation of N.Y. Penal L. §§ 110/155.25, and Attempted Criminal Possession of Stolen Property in the Fifth Degree, in violation of N.Y. Penal L. §§ 110/165.40. AR. 175–76. He was sentenced to a one-year conditional discharge. AR. 176.

On December 8, 2000, INS instituted removal proceedings by issuing a Notice to Appear, while Osses was in state custody serving his state sentence. AR. 209–211. Osses was served with the Notice to Appear on May 9, 2001. AR. 210. INS charged that Osses was removable under Immigration and Nationality Act ("INA") § 237(a)(2)(A)(ii) (8 U.S.C. § 1227(a)(2)(A)(ii)), because he was an alien convicted of two crimes involving moral turpitude not arising from a single scheme of criminal misconduct. AR. 211. The charge was based on Osses's New York State convictions.[4]

On June 18, 2001, Osses appeared for a hearing before the IJ by video-conference from Lakeview Shock Incarceration Correctional Facility.[5] AR. 45. The IJ granted Osses's request for an adjournment to

---

Homeland Security Act of 2002, 116 Stat. 2135; Pub.L. 107–296, 6 U.S.C. § 101, *et. seq.* The functions of the former INS relevant to this proceeding have been transferred to the Bureau of Immigration and Customs Enforcement.

**2.** On September 2, 2000, Osses filed a *pro se* petition in the United States District Court, Southern District of New York. Docket No. 1. By Order, dated October 10, 2002, the Southern District of New York transferred the petition to this Court because Osses was incarcerated in a New York State Department of Correctional Services' correctional facility in the Western District of New York. Docket No. 3.

**3.** Osses submitted numerous exhibits in support of the petition and bail motion. Docket Nos. 1, 17. In opposition, Respondents submitted an Answer and Memorandum of Law. Docket Nos. 9, 10.

**4.** Osses pled guilty in New York Supreme Court, Queens County, after indictment, to two counts of Grand Larceny in the Fourth Degree. AR. 177; 181–83. The Indictment charged Osses with stealing a credit card or debit card from one victim and United States currency from another victim. AR. 180–83. He also pled guilty to Attempted Petit Larceny and Attempted Criminal Possession of Stolen Property in the Fifth Degree in New York City Criminal Court. AR. 53, 55. Guilty pleas are equivalent to convictions after trial. *Mugalli v. Ashcroft,* 258 F.3d 52, 54 n. 2 (2d Cir.2001) (citing *Sui v. I.N.S.,* 250 F.3d 105 (2d Cir. 2001)).

**5.** Osses was serving his state sentence in the custody of the New York State Department of Correctional Services ("DOCS"). Lakeview Shock Incarceration Correctional Facility is located within the Western District of New York.

obtain counsel. AR. 49. On October 19, 2001, Osses appeared by video-conference for a hearing and was represented by counsel. AR. 51. Osses admitted the facts underlying his state criminal convictions, however, his counsel argued those facts did not meet the requirements of INA § 237(a)(2)(A)(iii) for two reasons. AR. 52, 55, 188, 211. First, he contended that he committed the crimes more than seven years after he entered the United States; and second, he argued that the Attempted Petit Larceny conviction was not an aggravated felony because it carried a maximum sentence of less than one year incarceration. AR. 55–58.

The IJ found that Osses had committed two crimes of moral turpitude as charged in the Notice to Appear. AR. 64–66. Counsel attempted to preserve the claim that Osses qualified for cancellation of removal, and the IJ offered to schedule a cancellation-of-removal hearing. AR. 66. INS counsel noted that while Osses appeared to qualify for a cancellation-of-removal on the charge in the Notice to Appear, INS could lodge an aggravated felony charge against him based on his resentencing. AR. 59, 66. The hearing was adjourned to afford Osses a cancellation-of-removal hearing and to permit INS to file the additional charge. AR. 66–67.

INS filed a Notice of Additional Charge of Admissibility/Deportability, dated October 18, 2001. Osses was charged as removable, under INA § 237(a)(2)(A)(iii) (8 U.S.C. § 237(a)(2)(A)(iii)), because he was convicted of an aggravated felony, as defined in 8 U.S.C. § 101(a)(43)(G), when he was re-sentenced for Grand Larceny in the Fourth Degree to one to three years incarceration. AR. 188.

The hearing reconvened on November 15, 2001, and Osses participated by video-conference. He admitted the facts underlying the additional charge. AR. 73–74. Osses's counsel argued that the re-sentencing did not constitute an aggravated felony because Osses did not serve more than one year on his Grand Larceny in the Fourth Degree conviction but on his violation of probation. AR. 75–76. Osses contended that he was eligible for cancellation of removal because he had not been convicted of an "aggravated felony." AR. 76. The IJ found that Osses's conviction was an "aggravated felony," that INS established both charges by clear and convincing evidence, and that Osses was not eligible for cancellation of removal, adjustment of status, or political asylum. AR. 78, 125–28. Osses was ordered removed by the IJ based on 8 U.S.C. §§ 237(a)(2)(A)(iii) and 237(a)(2)(A)(ii). AR. 125–28.

Osses appealed the order of removal to the BIA. AR. 18–32. Osses claimed that the determination that he had been convicted of an "aggravated felony" was erroneous because his resentencing to more than one year incarceration related to his violation of probation, rather than his underlying Grand Larceny in the Fourth Degree conviction. Osses also claimed that the IJ demonstrated bias by adjourning the hearing to permit INS to file an additional charge against him. *Id.* On February 27, 2002, the BIA affirmed the decision of the IJ. AR. 13–14.

## PETITIONER'S CLAIMS

Osses filed the petition in this proceeding on September 4, 2002.[6] Docket No. 1.

---

6. Respondents do not challenge jurisdiction in this matter generally. However, Respondents argue that the Court lacks jurisdiction over the claims that Osses is eligible for can-

cellation of removal and received unequal treatment during the hearing because he failed to exhaust administrative remedies by not raising the claims before the IJ or the

He alleges that the IJ erred in finding that (1) he was an aggravated felon subject to removal because of his criminal convictions, and (2) was ineligible for cancellation of removal. Osses also asserts that the IJ was biased because he granted an adjournment of the hearing allowing INS to file an additional charge against him. Osses also made vague and non-specific allegations that he was denied due process and equal protection during the administrative proceedings. Docket No. 1.

## DISCUSSION

### I. *Jurisdiction*

Before reaching the merits of the petition, the Court must address whether Osses established the jurisdictional prerequisite that an alien seeking habeas relief be "in custody," under 28 U.S.C. § 2241, and whether the petition properly should be considered at this time. *Simmonds v. INS*, 326 F.3d 351, 354 n. 2 (2d Cir.2003). In *Simmonds*, the court examined what constitutes "in custody" for purposes of a Section 2241 petition and whether such a petition by an alien in DOCS's custody, subject to an INS detainer, properly should be considered.

Section 2241 provides that a "writ of habeas corpus shall not extend to a prisoner unless ... [h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Simmonds*, 326 F.3d at 354 (quoting 28 U.S.C. § 2241(c)(3)). Simmonds was an alien in DOCS's custody serving concurrent sentences for drug and weapon possession convictions, the longest of which was 23 years to life. *Id.* at 353. Simmonds was subject to a final order of removal and an INS detainer. Under New York law, the earliest that he could be considered for parole was 2013. *Id.*

The Second Circuit determined that while Simmonds was not literally in INS custody when the petition was filed, the final order of removal was a sufficient "curtailment of liberty" to render him "in custody" for purposes of habeas review under Section 2241. *Id.* at 354–66.

Even though Simmons was "in custody," the Second Circuit analyzed whether Simmonds's petition was "ripe" to warrant the exercise of federal jurisdiction in light of the lengthy state sentence. However, in considering whether the claims "would better be heard now or at some point in the future," the Second Circuit ultimately declined to exercise jurisdiction based on considerations of judicial prudence. *Id.* at 359. The uncertainty as to whether Simmonds would be released on parole at all and the status of the immigration law if and when he was paroled, necessitated dismissal of the petition without prejudice as "not fully fit for review at this time." *Id.* at 362.

Unlike the petitioner in *Simmonds*, Osses does not face an extraordinarily long state sentence. The matter of ripeness or judicial prudence which dictated delay in the *Simmonds* case does not apply here. Therefore, the petition is fully fit for review at this time.

 The Court must also determine if it has effective personal jurisdiction over the proper respondents. Pursuant to 28 U.S.C. § 2243, a "writ [of habeas corpus] shall be directed to the person having custody of the person detained." A district court must have personal jurisdiction over the appropriate respondent to the habeas action, otherwise no writ may issue. *Carvajales–Cepeda v. Meissner*, 966 F.Supp. 207, 208 (S.D.N.Y.1997) (citing *Braden v. 30th Judicial Circuit Court of Kentucky*,

BIA. Docket 10, p. 7–8. Respondents also assert that the Court lacks subject matter jurisdiction to review the claims regarding the IJ's discretionary decisions. *Id.*

410 U.S. 484, 494–95, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); *Billiteri v. United States Board of Parole,* 541 F.2d 938, 948 (2d Cir.1976)). "The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden,* 410 U.S. at 494–95, 93 S.Ct. 1123. The proper respondent in a habeas action challenging a final order of removal is the official having day-to-day control over the petitioner. *Carvajales–Cepeda,* 966 F.Supp. at 208 (citing *Yi v. Maugans,* 24 F.3d 500, 507 (3d Cir.1994)).[7]

 In the instant proceeding, Osses was incarcerated in a correctional facility within the Western District of New York when he filed the Petition in September, 2002 (Docket No. 1). Thus, personal jurisdiction could have been obtained in the Western District of New York over the proper respondent who had day-to-day control over Osses. Likewise, when the petition was transferred to this Court from Southern District of New York in November, 2002, personal jurisdiction could have been obtained over the proper respondent because Osses remained incarcerated at a correctional facility within the Western District of New York. Although Osses was relocated to Pennsylvania when he was taken into INS custody in April, 2003, he already had established subject matter jurisdiction over the proper respondent in

this habeas proceeding prior to his transfer. Accordingly, under the circumstances presented here, Osses's transfer from the Western District of New York during the pendency of the proceeding does not divest this Court of its proper habeas corpus jurisdiction. See *Carvajales–Cepeda,* 966 F.Supp. at 208–09 (citing *Jones v. Cunningham,* 371 U.S. 236, 243–44, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963)).

Applying *Simmonds* to the instant case, Osses was "in custody" under 28 U.S.C. § 2241(c)(3) when he filed the petition because he was subject to a final order of removal and an INS detainer, and was incarcerated in the Western District of New York. Docket No. 1, p. 2.[8] Personal jurisdiction could have been obtained over the proper respondent, the official having day-to-day control over Osses in the Western District of New York, when the petition was filed. Personal jurisdiction over the proper respondent later was obtained when the case was transferred to this District. Docket No. 1.[9] Accordingly, the Court has jurisdiction to consider the merits of the petition.

**II.** *Exhaustion of Administrative Remedies*

 Generally, the "doctrine of exhaustion of administrative remedies requires a party to pursue all possible relief

---

**7.** As noted by Respondents, Osses improperly named Edward McElroy, Director of the New York District of INS, as a respondent, and the Immigration and Naturalization Service. Osses thereafter was transferred to INS custody and is under the supervision of the Warden at Pike County Correctional Facility, Lords Valley, Pennsylvania. Docket No. 12. However, INS is not an appropriate respondent because the agency is not a "person" having custody over a habeas petitioner. *Remoi v. United States Federal Government,* 2003 WL 21518756 (S.D.N.Y. May 16, 2003).

**8.** The Court currently does not have personal jurisdiction over the person who has day-to-day control over Osses because he was transferred to Pennsylvania when he was released to INS custody for deportation. Docket No. 12. Although Osses named the incorrect respondents in his petition, the appropriate person having custody of him clearly could have been named.

**9.** The Court need not address whether the petition was fully fit for review when filed because Osses since has been conditionally released from DOCS to INS custody pending removal. Docket No. 12.

within the deciding agency before seeking federal judicial review of an unfavorable administrative decision." *Theodoropoulos v. INS*, 313 F.3d 732, 736 (2d Cir.2002) (citing *Howell v. INS*, 72 F.3d 288, 291 (2d Cir.1995)). The doctrine of exhaustion of administrative remedies is activated either by explicit statutory language or when the agency provides a non-judicial mechanism for resolution of claims. *Theodoropoulos*, 313 F.3d at 736. "Where exhaustion [of administrative remedies] is required, a court must dismiss any unexhausted claim for lack of jurisdiction." *Id.* "Statutory exhaustion requirements are mandatory, and courts are not free to dispense with them." *Bastek v. Federal Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir.1998).

■ Specific statutory language requiring exhaustion of administrative remedies before seeking review of an IJ's determination in federal court is set forth in INA § 1252(d)(1). Section 1252(d)(1) provides that a "court may review a final order of removal only if … the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1); *Theodoropoulos*, 313 F.3d at 736–37. The exhaustion requirement in the INA constitutes a " 'clear jurisdictional bar, and admits of no exceptions.' " *Mejia–Ruiz v. INS*, 51 F.3d 358, 362 (2d Cir.1995) (interpreting the predecessor exhaustion requirement in the INA, and quoting *Roldan v. Racette*, 984 F.2d 85, 90

(2d Cir.1993)). While 28 U.S.C. § 2241 does not contain an exhaustion requirement, the Second Circuit has required an alien in INS custody to exhaust administrative remedies before filing a habeas petition. *Theodoropoulos*, 313 F.3d at 736–37 (petitioner facing a final order of removal must exhaust administrative remedies for jurisdiction before filing a 28 U.S.C. § 2241 petition) (citing *Mejia–Ruiz*, 51 F.3d at 364).

Osses seeks a hearing to determine his eligibility for cancellation of removal. Docket No. 1, p. 3. Osses did not claim, either before the IJ or the BIA, that he was eligible for cancellation of removal, and did not request a hearing.[10] Thus, Osses did not exhaust his administrative remedies concerning his cancellation of removal claim before filing this petition. Accordingly, the Court lacks jurisdiction to review the cancellation of removal claim.

### III. *Osses's Criminal Convictions*

Even if the cancellation-of-removal claim is reviewed on the merits, it would fail. Osses was convicted of numerous crimes, one of which constituted an aggravated felony for immigration purposes. Osses properly was found removable on that basis.

■ The central issue is whether Osses's conviction for Grand Larceny in the Fourth Degree constitutes an "aggravated felony" for immigration purposes.[11] The

---

**10.** Counsel conceded that Osses was not eligible for cancellation of removal during the hearing. AR. 78.

**11.** Osses also was convicted of Attempted Petit Larceny and Attempted Possession of Stolen Property in the Fifth Degree. His aggregate convictions were the basis of the charge related to two or more moral turpitude convictions not related to the a single scheme of criminal misconduct. AR. 211. The record reflects that Osses may have been eligible for cancellation of removal if only the moral tur-

pitude charge applied. AR. 65–67. Osses admitted the facts underlying each criminal conviction that formed the basis of the moral turpitude charge. AR. 52, 55, 73–74, 188, 211. The record provides ample support for the IJ's determination that the moral turpitude charge was established by evidence introduced at the hearing, including Osses's admissions.

Court applies a *de novo* standard in reviewing INS determinations and the agency's construction of the immigration statutes it administers, subject to the standard of deference articulated by the Supreme Court. *See INS v. Aguirre–Aguirre,* 526 U.S. 415, 424–425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (applying the principles of deference in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

It is undisputed that Osses pled guilty and was convicted on October 17, 1997 of two counts of Grand Larceny in the Fourth Degree.[12] AR. 186–87. While Osses initially was sentenced to probation, that sentence was revoked when he was convicted of other crimes. He was re-sentenced to one to three years incarceration. AR. 187. Osses also pled guilty to Attempted Petit Larceny and Attempted Criminal Possession of Stolen Property, and was sentenced on April 24, 1998 to a conditional discharge. AR. 175–76.

 Under the post-April 1996 INA statutory framework, an alien who is convicted of an aggravated felony is removable from the United States and is not entitled to a discretionary waiver of deportation or cancellation of removal. *Rankine v. Reno,* 319 F.3d 93, 95–96 (2d Cir.2003); *Martinez v. Ashcroft,* 236 F.Supp.2d 360, 362–63 (S.D.N.Y.2002). The undisputed facts here support the IJ's determination that Osses was removable on two bases: first, as an alien convicted of two crimes involving moral turpitude not arising from a single scheme of criminal misconduct, pursuant to INA § 237(a)(2)(A)(ii); and

second, under INA § 237(a)(2)(A)(iii) because Osses was convicted of an aggravated felony, as defined in 8 U.S.C. § 101(a)(43)(G), when he was re-sentenced to one to three years incarceration for his Grand Larceny conviction. Osses is not eligible for relief under either INA §§ 212(c) or (h). *Id; see also INS v. St. Cyr,* 533 U.S. 289, 295, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). Thus, Osses is not entitled to relief from the final order of removal and is not entitled to habeas relief on this basis. *See Hylton v. INS,* 2003 WL 1537385, at *4 (S.D.N.Y. March 24, 2003).

## IV. *The Bias Claim*

The Second Circuit has considered whether, after enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–546, a federal court reviewing a habeas petition has subject matter jurisdiction over a claim challenging a determination by an IJ and the BIA that is discretionary, rather than statutory or constitutional. *Sol v. INS,* 274 F.3d 648, 651 (2d Cir.2001), *cert. denied,* 536 U.S. 941, 122 S.Ct. 2624, 153 L.Ed.2d 807 (2002). A habeas corpus petition may be used to challenge only incarceration or orders of deportation that are "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Sol,* 274 F.3d at 651.

 Osses contends that the adjournment of the removal hearing, which permitted INS to file an additional charge, is evidence of the IJ's bias[13] against him.

---

**12.** Both of Osses's convictions occurred after the effective date of the statute barring discretionary relief from deportation under INA § 212(c). Section 440(d) of the Antiterrorism and Effective Penalty Act, 110 Stat. 1214 (1996), effective April 24, 1996.

**13.** The adjournment which afforded time to permit INS to file an additional charge did not demonstrate bias. The regulations concerning removal or deportation proceedings afford wide latitude to the IJ in the conduct of the proceedings, especially concerning scheduling. *See* 8 C.F.R. §§ 3.29–3.31. An IJ may

Consideration of "purely legal issues" does not require a federal court to re-evaluate "the agency's factual findings or the Attorney General's exercise of discretion." *Sol,* 274 F.3d at 650 (citing *Henderson v. INS,* 157 F.3d 106, 120 n. 10 (2d Cir.1998)). However, reviewing the bias claim concerning the hearing adjournment would require this Court to undergo just such an impermissible reassessment of the IJ's exercise of discretion. *See id.*

The habeas relief provided by 28 U.S.C. § 2241, namely the review of statutory or constitutional errors, does not provide this Court with jurisdiction to invade the realm of a discretionary determination by an IJ. *Sol,* 274 F.3d at 651. Because the claim does not raise a proper statutory or constitutional question, Osses is not entitled to habeas relief on this ground.[14]

## CONCLUSION

The petition for a writ of habeas corpus is dismissed.

The application for bail/bond release on supervised conditions is denied.

The stay of Osses's removal is vacated.

Further, because the issues raised in the petition are not the type that a court could resolve in a different manner, and these issues are not debatable among jurists of reason, the Court concludes that the petition presents no federal question of worthy of attention from the Court of Appeals. Therefore, pursuant to 28 U.S.C. § 2253 and Fed. R.App. P. 22(b), the Court denies a certificate of probable cause. Finally, because it appears that any appeal would not be taken in good faith, leave to appeal *in forma pauperis* will be denied.

IT IS SO ORDERED.

---

grant a continuance of a hearing for good cause. 8 C.F.R. § 3.29. Further, "[a]t any time during deportation or removal proceedings, additional or substituted charges of deportability and/or factual allegations may be lodged by the Service in writing." 8 C.F.R. § 3.30.

14. Osses filed an application seeking release on bail/bond/supervised release pending removal. Docket No. 12. A federal court retains the inherent authority to release INS detainees with conditions. *Mapp v. Reno,* 241 F.3d 221, 223 (2d Cir.2001). However, an alien may not seek release on conditions absent exhaustion of administrative remedies. *Wang v. Ashcroft,* 320 F.3d 130, 145–46 (2d Cir.2003) (citing INA § 241; 8 U.S.C. § 1231(a)). There is no evidence in the record establishing that Osses exhausted his administrative remedies. Even if Osses had exhausted administrative remedies, release of an INS detainee with conditions is discretionary and is exercised "only in unusual cases, or when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *Mapp,* 241 F.3d at 223. In order to qualify for release on conditions, an alien must establish that his habeas petition has substantial merit and that the necessary "extraordinary or exceptional circumstances" exist. *Id.* In light of the determination that the petition lacks merit, this Court denies Osses's application for bail/bond/supervised release pending his removal.